# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                         )
WILMA L. BRADLEY,                        )
                                         )
                    Plaintiff,           )
                                         )
        v.                               )   Case Number:  1:06CV2129 (TFH)
                                         )
MICHAEL JOHANNS, Secretary, United States )
Department of Agriculture,               )
                                         )
                    Defendant.           )
                                         )
_____ )

## MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT

Defendant Michael Johanns, Secretary, United States Department of Agriculture, through

undersigned counsel, hereby moves that the Court partially dismiss Plaintiff's complaint for

failure to timely exhaust administrative remedies.  Specifically, Plaintiff's claims of retaliation

should be dismissed pursuant to Federal Rule of Procedure 12(b)(6) for failure to state a claim, to

the extent that they concern alleged retaliatory acts that occurred more than forty-five (45) days

prior to June 22, 2004, the date on which Plaintiff contacted an EEO counselor concerning her

retaliation claims.

Defendant further moves that the Court enter summary judgment for Defendant, pursuant

to Federal Rule of Civil Procedure 56, on any retaliation claim that survives Defendant's motion

to dismiss.  Plaintiff voluntarily withdrew her retaliation claims during the administrative

proceedings.  Therefore, she did not exhaust her administrative remedies with respect to any

retaliation claim raised in this case.

A supporting memorandum of law, statement of material facts not in dispute, and proposed order are submitted herewith.

WHEREFORE, Defendant respectfully requests that the Court partially dismiss Plaintiff's retaliation claim, and enter summary judgment for Defendant on any retaliation claim(s) that the Court does not dismiss.

Dated: June 8, 2007                                 Respectfully submitted,


_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


_____
ROBIN M. MERIWEATHER, D.C. Bar. # 490114
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 514-7198; Fax: (202) 514-8780
Robin.Meriweather2@usdoj.gov

-2-

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

WILMA L. BRADLEY,                              )
                                               )
                    Plaintiff,                 )
                                               )
        v.                                     )   Case Number:  1:06CV2129 (TFH)
                                               )
MICHAEL JOHANNS, Secretary, United States      )
Department of Agriculture,                     )
                                               )
                    Defendant.                 )
                                               )
_____ )

### <u>DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS</u>

Pursuant to Local Rules 7(h) and 56.1, defendant Michael Johanns, Secretary, United

States Department of Agriculture ("USDA") hereby submits the following statement of material

facts as to which there is no genuine dispute.  USDA believes that there are no material facts in

dispute that would preclude disposition of Plaintiff's retaliation claim by entry of summary

judgment.  The facts established below are sufficient to support the award of summary judgment

to Defendant on Plaintiff's claim of retaliation.

1.      Plaintiff Wilma L. Bradley ("Plaintiff") contacted an EEO Counselor about the

        following issues on June 12, 2003: Whether the agency subjected her to

        discrimination based on her age (DOB: 06/09/1948), sex (female), race (Black)

        and reprisal (prior EEO activity) when management:

        (a) on May 1, 2003, did not select her for the position of Lead Correspondence
        Review Specialist, GS-0301-12, under Vacancy Announcement Number OES-02-
        03;

        (b) did not allow her to gain supervisory experience by selecting Stay-in-
        Schoolers/Summer Interns while similarly situated others were allowed to gain

supervisory experience (assignment of duties);

(c) did not allow her to attend "top level" meetings with him while similarly situated others were allowed to attend; and

(d) did not submit her position for a "top secret" clearance while similarly situated others positions were submitted.

Declaration of Larry Newell, ¶ 4 (Exh. 1).

2. This complaint was assigned Agency Case No. CRSD-2003-00042. *See* Newell Decl. ¶ 5.

3. Plaintiff's notice of right to file a formal administrative complaint was issued on August 11, 2003 for CRSD-2003-00042. *See* Newell Decl. ¶ 6.

4. On October 20, 2003, Plaintiff amended Agency Case No. CRSD-2003-00042 to include a reprisal claim concerning an alleged denial of a cash award on or about October 2, 2003. *See* Newell Decl. ¶ 7; Exh. 7.

5. Plaintiff filed her formal complaint for Case No. CRSD-2003-00042 on August 12, 2003. *See* Newell Decl. ¶ 8.

6. The Agency accepted the issue for investigation on March 26, 2004. *See* Newell Decl. ¶ 8.

7. Plaintiff contacted an EEO Counselor about the following issues on June 22, 2004:

Whether the agency subjected the complainant to discrimination based on reprisal (prior EEO activity) when, since on or about June 12, 2003, and continuing, the agency failed to provide her with a performance award, the most recent denial occurring on June 15, 2004?

*See* Newell Decl. ¶ 9.

8. The complaint that arose out of the June 22, 2004 EEO Counselor's meeting was assigned the Agency Case No. CRSD-2004-00103. *See* Newell Decl. ¶ 10.

9.      Plaintiff's notice of right to file a formal administrative complaint was issued on

        July 14, 2004.  *See* Newell Decl. ¶ 11.

10.     Plaintiff filed an administrative complaint July 15, 2004.  *See* Exh. 2.

11.     After Plaintiff filed her formal complaint, the Agency accepted the issue for

        investigation on February 17, 2005.  *See* Newell Decl. ¶ 12.

12.     Following an investigation of the complaints, Plaintiff submitted a request for a

        hearing.  Agency Case No. CRSD-2004-00103 was consolidated with complaint

        CRSD-2003-00042 under EEOC 100-2005-00029X.  *See* Newell Decl. ¶ 13.

13.     During the course of the discovery period, Plaintiff abandoned her claims that she

        was denied a promotion based on her sex and race, and proceeded at hearing only

        under age and reprisal as the alleged bases for discrimination.  *See* Newell Decl. ¶

        14.

14.     On June 20, 2006, Plaintiff's complaints were heard at a hearing.  The issue at

        hearing for EEOC No. 100-2005-0029X only addressed:

        Whether Plaintiff was discriminated against based on her age (DOB:06/09/1948)
        when the Agency declined to select her for the position of Lead Correspondence
        Review Specialist.

        *See* Newell Decl. ¶ 15.

15.     Plaintiff withdrew all her claims based on retaliation at the hearing.  *See* Newell

        Decl. ¶16.

16.     On August 3, 2006, the administrative Judge ("AJ") issued a decision in EEOC No.

        100-2005-00029X.  *See* Newell Decl. ¶ 17; Exh. 5.

17.     The Agency issued its Final Order on September 15, 2006, which fully

implemented the AJ's decision, and administratively closed Agency Case No.

CRSD-2004-00103 based on Plaintiff's voluntary withdrawal of her retaliation

claims at the hearing.  *See* Newell Decl. ¶ 18; Exh. 6.

Dated: June 8, 2007                          Respectfully submitted,


_____

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____

RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


_____

ROBIN M. MERIWEATHER, D.C. Bar. # 490114
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 514-7198; Fax: (202) 514-8780
Robin.Meriweather2@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| WILMA L. BRADLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case Number:  1:06CV2129 (TFH) |
| | ) |
| MICHAEL JOHANNS, Secretary United States | ) |
| Department of Agriculture, | ) |
| | ) |
| Defendant. | ) |
| | ) |

_____)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND  MOTION FOR SUMMARY JUDGMENT

### SUMMARY OF ARGUMENT

Federal employees must exhaust their administrative remedies prior to bringing an employment discrimination suit against a federal employer.  Here, that means that Plaintiff Wilma Bradley has no actionable claim against Defendant for retaliation or discrimination unless she exhausted her administrative remedies with respect to each allegedly discriminatory act.  Bradley failed to satisfy that exhaustion requirement in two critical respects.  First, she did not contact an Equal Employment Opportunity ("EEO") counselor within forty-five (45) days of two of the three allegedly retaliatory acts identified in her complaint.  The Court must therefore dismiss her retaliation claim pursuant to Federal Rule of Civil Procedure 12(b)(6) to the extent that it is based on the two allegedly retaliatory actions that occurred more than forty-five (45) days prior to Bradley's initiation of the administrative process.  Second, Bradley failed to complete the administrative process with respect to her retaliation claim.  At the beginning of the hearing, Bradley's attorney stated that Bradley would not pursue any claim based on a theory of

retaliation.  That abandonment of the administrative process requires entry of summary judgment in favor of Defendant on any portion of the retaliation claim that the Court does not dismiss pursuant to Rule 12(b)(6).  In sum, Bradley's retaliation claim is not properly before this Court.

### BACKGROUND

Plaintiff Wilma L. Bradley is an employee of the United States Department of Agriculture ("USDA") who alleges that USDA discriminated against her on the basis of her age, and retaliated against her for engaging in protected activities.  *See* Compl. ¶¶ 1, 5.  Bradley's age discrimination claims relate to her non-selection for a Lead Correspondence Review Specialist position at USDA.  *See* Compl. ¶¶ 13, 21-22.  Bradley's retaliation claim concerns USDA's alleged denial of three awards to Bradley.  Specifically, Bradley alleges that: (1) on or about July 14, 2003, USDA did not approve an award to Ms. Bradley and others for their "contribution and participation to a special project," *id.* ¶ 27; (2) in or around December 2003, USDA "denied Ms. Bradley a year-end cash award," *id.* ¶ 28; and (3) on or about June 15, 2004, USDA "bypassed Ms. Bradley for any cash awards, despite her significant contributions to the department."  *Id.* Bradley alleges that the awards were denied as retaliation for filing EEO complaints and participating in the EEO/EEOC process.  *See id.* ¶¶ 29, 37.

Bradley filed two administrative complaints with USDA's EEO office, which were assigned Nos. CRSD-2003-00042 and CRSD-2004-00103.  *See* Decl. of Larry Newell, ¶¶ 5, 10 (Exh. 1).  The first complaint, assigned No. 2003-00042 involved claims of age, sex, and race discrimination. *See id.* ¶ 4.  On October 20, 2003, Bradley amended that complaint to include a retaliation claim concerning an alleged denial of a cash award on or about October 2, 2003.  *See*

*id.* ¶ 7.  Bradley contacted an EEO Counselor concerning the claims in her second complaint, No. 2004-00103, on June 22, 2004.  *See id.* ¶¶ 9-10; *id.* at Exh. B.  On July 15, 2004, Bradley filed a formal complaint, which the USDA accepted for investigation.  *See id.* ¶ 12; Exh. 2.  After the investigation, Plaintiff chose not to require USDA to issue a final decision, and instead requested a hearing.  *See id.* ¶ 13; Exh. 3.

At the beginning of the hearing, Bradley withdrew her claims of retaliation.  *See* Newell Decl. ¶ 15; Exh. 4 (Tr. of June 20, 2006 hearing).  Bradley's counsel stated, "[w]e're not going to bring the retaliation claim."  Exh. 4 at 6.  Accordingly, the Administrative Judge stated that the hearing would not address the retaliation claims.  *See id.* at 7.  Thereafter, USDA's EEO office administratively closed Bradley's second complaint (which raised only retaliation claims).  *See* Newell Decl. ¶¶ 17.

The Administrative Judge issued a decision August 3, 2006.  *See* Newell Decl. ¶ 16; Exh. 5.  That decision did not address the merits of Bradley's retaliation claims, in light of the withdrawal of those claims at the hearing.  *See* Exh. 5 at n.2.  USDA issued a final order September 15, 2006, which implemented the Administrative Judge's decision.  *See* Newell Decl. ¶ 17; Exh. 6.  The September 15, 2006 decision did not reach the merits of the retaliation claims, because Plaintiff had voluntarily withdrawn those claims.  *See* Exh. 6 at n.1.

## STANDARD OF REVIEW

### A.     Motion to Dismiss

Defendant moves for dismissal pursuant to Rule 12(b)(6), because Plaintiff fails to state a claim upon which relief can be granted.  Rule 12(b)(6) requires dismissal if a plaintiff fails to plead "enough facts to state a claim for relief that is plausible on its face."  *Bell Atl. Corp. v.*

*Twombly*, 127 S.Ct. 1955, 1974 (2007) (abrogating prior standard which required the moving

party to show that plaintiff can prove no set of facts in support of its claim which would entitle it

to relief"). When reviewing a 12(b)(6) motion to dismiss, "the court must accept the complaint's

well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor."

*Thompson v. Capitol Police Bd.*, 120 F. Supp. 2d 78, 81 (D.D.C. 2000) (citations omitted); *see

also Maljack Prods. Inc. v. Motion Picture Ass'n of Am., Inc.*, 52 F.3d 373, 375 (D.C. Cir. 1995);

*Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999). "The court is not required, however,

to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual

allegations." *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001), *aff'd*, 346 F.3d 192 (D.C. Cir.

2003); *see also Kowal v. MCI Comms. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

### B.    Motion for Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d

1538, 1540 (D.C. Cir. 1995); *Molerio v. FBI*, 749 F.2d 815, 823 (D.C. Cir. 1984). Where no

genuine dispute exists as to any material fact, summary judgment is required. *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A genuine issue of material fact is one that could change the outcome of the litigation. *Id.*

at 247. The party moving for summary judgment need not prove the absence of an essential

element of the nonmoving party's case. *Celotex*, 477 U.S. at 325. "The burden on the moving

party may be discharged by 'showing' — that is, pointing out to the (Court) — that there is an

-4-

absence of evidence to support the non-moving party's case." *Id.*  Once the moving party has met

its burden, the non-movant may not rest on mere allegations, but must proffer specific facts

showing that a genuine issue exists for trial.  *See Matsushita Elec. Indus. Co. v. Zenith Radio

Corp.*, 475 U.S. 574, 586 (1986); *see also* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Banks

v. C & P Tel. Co.*, 802 F.2d 1416 (D.C. Cir. 1986); *Burke v. Gould*, 286 F.3d 513, 517-20 (D.C.

Cir. 2002) (requiring a showing of specific, material facts).  "[T]he mere existence of a scintilla of

evidence in support of the plaintiff's position will be insufficient; there must be evidence on

which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Hayes

v. Shalala*, 902 F. Supp. 259, 263 (D.D.C. 1995) (opposition to summary judgment must consist

of more than mere unsupported allegations or denials); *Johnson v. Digital Equip. Corp.*, 836 F.

Supp. 14, 18 (D.D.C. 1993) (evidence that is merely colorable or not sufficiently probative is

insufficient to defeat summary judgment).

## ARGUMENT

I. **PLAINTIFF'S RETALIATION CLAIM MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM WITH RESPECT TO TWO OF THE THREE ALLEGEDLY RETALIATORY ACTS BECAUSE PLAINTIFF FAILED TO EXHAUST ADMINISTRATIVE REMEDIES FOR THOSE ACTS.**

    A. **Federal Employees Must Exhaust Administrative Remedies For All Allegedly Discriminatory Acts Prior to Filing Suit.**

Federal employees may file a civil action under Title VII concerning employment

discrimination only after exhausting their administrative remedies before the relevant federal

agency for each discrete alleged discriminatory act.  42 U.S.C. § 2000e-16(c); *National

Passenger R.R. Corp. v. Morgan*, 536 U.S. 101, 108-09, 113 (2002); *More v. Snow*, 480 F. Supp.

2d 257, 270 (D.D.C. 2007).  The exhaustion requirement is "not a mere technicality." *Park v.

*Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995).  Instead, the "requirement is mandatory and serves to allow the agency an opportunity to resolve the matter internally and avoid unnecessarily burdening the courts." *Bush v. Engleman*, 266 F. Supp. 2d 97, 101 (D.D.C. 2003) (*citing Wilson v. Pena*, 79 F.3d 154, 165 (D.C. Cir. 1996)).

Under rulemaking authority delegated by Title VII, *see* 42 U.S.C. § 2000e-16(b), the Equal Employment Opportunity Commission ("EEOC") has established "detailed procedures" and regulatory time limits that govern employees' pursuit of those administrative remedies. *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997); 29 C.F.R. Part 1614 (Federal Sector Equal Employment Opportunity).  The EEOC's regulations require that "aggrieved" employees consult an agency EEO Counselor within forty-five (45) days of the "matter alleged to be discriminatory or, in the case of personnel action, within forty-five (45) days of the effective date of the action."  29 C.F.R. § 1614.105(a)(1); *see also Park,* 71 F.3d at 907; *More*, 480 F. Supp. 2d at 269-70.  This forty-five day time limit is not jurisdictional, but operates as a statute of limitations defense.  *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393(1982); *Armstrong v. Reno*, 172 F Supp. 2d 11, 20 (D.D.C. 2001).  If an employee fails to contact an EEO counselor within that time period, her claims will be time-barred.  *Bowden*, 106 F.3d at 437; *Park,* 71 F.3d at 907 (D.C. Cir. 1995); *More*, 480 F. Supp. 2d at 270-71; *Williams v. Munoz*, 106 F. Supp. 2d 40, 42 (D.D.C. 2000).      If the matter is not resolved through informal counseling, the aggrieved employee must, within fifteen (15) days, file a written complaint with the agency that allegedly discriminated against her.  29 C.F.R. § 1614.106(a)-(c).  The agency must investigate the matter within one hundred eighty (180) days or reject the complaint and issue a final dismissal.  *Id.*

§ 1614.106(d)(2).  At the conclusion of the agency's investigation, the complainant may request a

hearing before an EEOC administrative judge or an immediate final decision by the agency.  *Id.*

 § 1614.108(f).  A complainant who receives an adverse final decision from the agency may

appeal that decision to the EEOC within thirty (30) days, or may file a civil action within ninety

(90) days.  42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407; *see also Wilson v. Pena*, 79 F.3d 154

(D.C. Cir. 1996); *Holley v. Dep't of Veterans Affairs*, 165 F.3d 244, 246 (3d Cir. 1999).  A

complainant generally may file a civil action at any time after a complaint has been pending

before the agency or the EEOC for at least one hundred eighty (180) days.  42 U.S.C. § 2000e-

16(c); 29 C.F.R. § 1614.407.

**B.**     **Bradley Has Not Exhausted Her Administrative Remedies With Respect to the Allegedly Retaliatory Conduct That Occurred July 14, 2003 and in December 2003**.

Bradley's complaint fails to state a claim for two of the three alleged retaliatory acts

because she did not comply with the forty-five (45) day administrative filing requirements for

those two acts.  Where, as here, "an employee alleges 'serial violations,' *i.e.*, a series of

actionable wrongs, a timely EEOC charge must be filed with respect to each discrete alleged

violation."  *Ledbetter v. Goodyear Tire & Rubber*, No. 05-1074, ___ S. Ct. ___, 2007 WL

1528298, at *12 (May 29, 2007); *see also National R.R. Passenger Corp. v. Morgan*, 536 U.S.

101, 105 (2002); *More*, 480 F. Supp. 2d at 271.  Thus Bradley's retaliation claim must be limited

to conduct that occurred within forty-five (45) days of when Bradley contacted an EEOC

counselor.  To the extent her claim involves actions outside that time period, it must be dismissed.

The complaint states that Defendant denied Bradley a cash award on or about July 14,

2003, December 2003, and June 15, 2004, and that the denial of those awards constituted reprisal

for Bradley's prior EEO activity.  *See* Compl. ¶¶ 27-29.  Plaintiff does not allege that she

contacted an EEOC counselor or filed an administrative complaint alleging reprisal within forty-

five (45) days of July 14, 2003 or December 2003.  Instead, Plaintiff states that she amended her

administrative complaint to include those allegedly retaliatory actions July 15, 2004.  *See id.* ¶ 30.

The record reveals that Plaintiff did not amend a prior administrative charge July 15, 2004, and

instead filed a new administrative complaint on that date.  *See* Exh. 2.  Although July 15, 2004

was within forty-five (45) days of June 15, 2004, it was several months after December 2003, and

nearly a year after July 14, 2003.  While Bradley amended her prior EEO charge to include an

allegation of retaliation on October 20, 2003, that amendment concerned an alleged denial of a

cash award October 2, 2003, whereas the complaint alleges that a cash award was denied in July

and December 2003.  *See* Newell Decl. ¶ 7; Exh. 7.  Plaintiff's failure to begin the administrative

claims process within forty-five (45) days of the July 14, 2003 and December 2003 actions

precludes Plaintiff from raising a retaliation claim in this Court concerning the alleged cash award

denials on July 14, 2003 and December 2003.

The fact that Plaintiff's administrative charge appears to have been timely with respect to

the alleged June 15, 2004 cash award denial does not cure the untimeliness of the charge with

respect to the other alleged retaliatory actions.  Under *Morgan*, each retaliatory adverse

employment action "constitutes a separate actionable unlawful employment practice," to which

the forty-five day time limit applies.  536 U.S. at 113; *see also Ledbetter*, 2007 WL 1528298, at

*12 (reaffirming that the timeliness requirements apply to "each discrete alleged violation");

*More*, 480 F. Supp. 2d at 271; *Prince v. Rice*, 453 F. Supp. 2d 14, 24 (D.D.C. 2006).

Accordingly, Plaintiff's July 14, 2004 administrative charge cannot reach back to include

-8-

allegedly retaliatory conduct that occurred more than forty-five (45) days prior to July 14, 2004. The Court must therefore dismiss those aspects of Plaintiff's retaliation claim that are based on cash awards that allegedly were denied in July and December, 2003.

## II.    BRADLEY'S FAILURE TO COMPLETE THE ADMINISTRATIVE PROCESS REQUIRES ENTRY OF SUMMARY JUDGMENT FOR DEFENDANT ON THE RETALIATION CLAIM.

As explained *supra*, a plaintiff that brings a reprisal claim under Title VII must exhaust administrative remedies prior to seeking judicial review of that claim. "A plaintiff may not cut short the administrative process prior to its final disposition, for upon abandonment a claimant fails to exhaust administrative relief and may not thereafter seek redress from the courts." *Bush*, 266 F. Supp. 2d at 101 (*citing Greenlaw v. Garrett*, 59 F.3d 994, 997 (9th Cir. 1995) ("A plaintiff who abandons the administrative process mid-stream 'prevents exhaustion and precludes judicial review of those claims.'")). Accordingly, courts in this Circuit have held that a plaintiff that begins the administrative process but then fails to pursue or complete it has failed to exhaust administrative remedies, and cannot bring suit on the basis of the abandoned claim(s). *See, e.g.*, *Wiley v. Johnson*, 436 F. Supp. 2d 91, 95-96 (2006) (dismissing claim where plaintiff voluntarily dismissed administrative charge); *Smith v. Koplan*, 362 F. Supp. 2d 266, 268 (D.D.C. 2005) ("[W]hen a claimant abandons any part of the administrative process, she is barred from seeking redress from the courts."). Likewise, a plaintiff is deemed to have failed to exhaust administrative remedies if (s)he effectively abandons the administrative process by refusing to cooperate or participate in the administrative proceedings. *See Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003) (concluding plaintiff's refusal to participate in the administrative process barred discrimination suit).

-9-

Defendant is entitled to summary judgment on Bradley's retaliation claim because Bradley, by voluntarily withdrawing the underlying EEOC charge, failed to exhaust her administrative remedies. Bradley filed an administrative charge alleging retaliation on July 15, 2004. *See* Compl. ¶ 30; Exh. 2. After the investigation, Bradley submitted a request for a hearing, and elected not to request that USDA issue a final agency decision. *See* Newell Decl. ¶ 13. However at the beginning of the hearing, Bradley withdrew her claims based on retaliation, stating "[w]e're not going to bring the retaliation claim." *See* Newell Decl. ¶ 15; Exh. 4 at 6 (Tr. of June 20, 2006 Hearing). Given Bradley's withdrawal of that claim, the administrative judge did not analyze that claim when reviewing Bradley's other discrimination allegation, and the EEOC administratively closed that claim. *See* Exh. 5 at n.2 (Aug. 3, 2006 Decision); Exh. 6 at n.1 (Sept. 15, 2006 Final Order). Bradley's voluntary dismissal of her reprisal claim compels the conclusion that she failed to exhaust her administrative remedies as to that claim. *See, e.g.*, *Wiley*, 436 F. Supp. 2d at 95 (dismissing for failure to exhaust where plaintiff voluntarily withdrew claims prior to hearing); *Smith*, 362 F. Supp. 2d at 268-69 (dismissing for failure to exhaust where plaintiff failed to complete the hearing process).

*Wiley v. Johnson*, 436 F. Supp. 2d 91 (D.D.C. 2006), is on all fours with this case, and that court's analysis is instructive. Wiley filed an administrative charge with the EEOC alleging race, color, and sex discrimination and reprisal. *See id.* at 93. After the EEO investigation was complete, Wiley requested an EEOC hearing. *See id.* However before the hearing, Wiley withdrew his administrative claim, and informed the EEOC that he intended to litigate that claim in court. *See id.* at 93-94. The court dismissed *Wiley*'s claims on exhaustion grounds, reasoning that "[a] voluntary dismissal cannot be used to circumvent the requirement of exhaustion." *Id.*

-10-

The same reasoning applies here. Like Wiley, Bradley requested a hearing, but then voluntarily withdrew her claim. Her decision to do so prevented the agency from issuing a decision on the merits of Bradley's retaliation claims. Having abandoned those claims below, Bradley cannot raise them in this Court. Accordingly, the Court should enter summary judgment for Defendant on the issue of retaliation.

## CONCLUSION

For the foregoing reasons, the Court should partially dismiss Bradley's retaliation claim for failure to contact an EEO Counselor within forty-five (45) days of each alleged retaliatory act, and should enter summary judgment in favor of Defendant on any portion of Bradley's retaliation claim that survives the motion to dismiss.

Dated: June 8, 2007                    Respectfully submitted,


                                       _____/s/_____
                                       JEFFREY A. TAYLOR, D.C. BAR # 498610
                                       United States Attorney


                                       _____/s/_____
                                       RUDOLPH CONTRERAS, D.C. BAR #434122
                                       Assistant United States Attorney


                                       _____/s/ Robin M. Meriweather_____
                                       ROBIN M. MERIWEATHER, D.C. Bar. # 490114
                                       Assistant United States Attorney
                                       555 Fourth St., N.W.
                                       Washington, D.C.  20530
                                       Phone: (202) 514-7198; Fax: (202) 514-8780
                                       Robin.Meriweather2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of June, 2007, I caused the foregoing Motion, Memorandum, and Statement of Material Facts to be filed and served via the Court's Electronic Case Filing system or, should I receive notice from the ECF system that electronic service was unsuccessful, to be served upon plaintiff by first-class mail, postage prepaid, addressed as follows:

Camilla C. McKinney, Esq.
Law Offices of Camilla C. McKinney, PLLC
1100 Fifteenth Street, N.W. Suite 300
Washington, DC 20005


        /s/   Robin M. Meriweather
ROBIN M. MERIWEATHER, D.C. Bar # 490114

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| WILMA L. BRADLEY | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case Number:  1:06CV2129 (TFH) |
| | ) |
| MICHAEL JOHANNS, Secretary United States Department of Agriculture, | ) |
| | ) |
| Defendant. | ) |
| | ) |

_____)

**ORDER**

Upon consideration of Defendant's Motion to Dismiss Or in the Alternative for Summary Judgment , it is this _____ day of _____, 2007,

_____    ORDERED that Defendant's Motion to Dismiss portions of Plaintiff's retaliation claim be and is hereby GRANTED.

_____    ORDERED that Defendant's Motion for Summary Judgment on the claim of retaliation be and is hereby GRANTED.

SO ORDERED.

_____
United States District Judge

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WILMA L. BRADLEY, <br> PLAINTIFF, | ) <br> ) <br> ) | |
| | ) | Civil Action No. 06-2129 |
| v. | ) <br> ) <br> ) | |
| MIKE JOHANNS, <br> SECRETARY, <br> U.S. DEPARTMENT OF AGRICULTURE <br> DEFENDANT. | ) <br> ) <br> ) <br> ) <br> ) | Date:  June 7, 2007 |

## DECLARATION OF LARRY W. NEWELL

I, Larry W. Newell, do hereby declare and say:

1.  I am employed as the Chief, Civil Rights Services Division, Office of Civil Rights, U.S. Department of Agriculture ("the Agency") in Washington, DC.

2.  I have been employed in the capacity since 2004.

3.  As part of my employment, I have access to the records of complaints of discrimination against the Office of the Executive Secretariat ("OES").

4.  Plaintiff Wilma L. Bradley ("Plaintiff") contacted an EEO Counselor about the following issues on June 12, 2003:

    Whether the agency subjected her to discrimination based on her age (DOB: 06/09/1948), sex (female), race (Black) and reprisal (prior EEO activity) when management:

    1.  on May 1, 2003, did not select her for the position of Lead Correspondence Review Specialist, GS-0301-12, under Vacancy Announcement Number OES-02-03;

    2.  did not allow her to gain supervisory experience by selecting Stay-in-

1

Schoolers/Summer Interns while other similarly situated employees were allowed to gain supervisory experience (assignment of duties);

3. did not allow her to attend top level meetings with him while other similarly situated employees were allowed to attend; and

4. did not submit her position for a top secret clearance while other similarly situated employees' positions were submitted.

*See Exhibit A, Counselor's Report for DSZ File Folder 32275.*

5. This complaint was assigned the Agency Case No. CRSD-2003-00042.

6. Plaintiff's notice of right to file a formal administrative complaint was issued on August 11, 2003 for CRSD-2003-00042.

7. On October 20, 2003, Plaintiff amended Agency Case No. CRSD-2003-00042 to include a reprisal claim concerning an alleged denial of a cash award on or about October 2, 2003.

8. Plaintiff filed her formal complaint for Case No. CRSD-2003-00042 on August 12, 2003. The Agency accepted the issues for investigation on March 26, 2004.

9. Plaintiff contacted an EEO Counselor about the following issues on June 22, 2004:

Whether the agency subjected the complainant to discrimination based on reprisal (prior EEO activity) when, since on or about June 12, 2003, and continuing, the agency failed to provide her with a performance award, the most recent denial occurring on June 15, 2004?

*See Exhibit B, EEO Counselor's Report for DSZ 42278.*

10. This complaint was assigned the Agency Case No. CRSD-2004-00103.

11. Plaintiff's notice of right to file a formal administrative complaint was issued on July 14, 2004.

12. Plaintiff filed her formal complaint, and the Agency accepted the issue for investigation on February 17, 2005.

13.    Following an investigation of the complaints, Plaintiff submitted a request for a hearing. Agency Case No. CRSD-2004-00103 was consolidated with Agency Case No. CRSD-2003-00042 under EEOC 100-2005-00029X.

14.    During the course of the discovery period, Plaintiff abandoned her claims that she was denied a promotion based on her sex and race, and proceeded at hearing only under age and reprisal as the alleged bases for discrimination.

15.    On June 20, 2006, Plaintiff's complaints were heard at a hearing. The issue at hearing for EEOC No. 100-2005-0029X only addressed:

Whether Plaintiff was discriminated against based on her age (DOB: 06/09/1948) when the Agency declined to select her for the position of Lead Correspondence Review Specialist.

16.    Plaintiff withdrew all her claims based on retaliation at the hearing. *See Exhibit C, Hearing Transcript, Pgs. 1-8.*

17.    On August 3, 2006, the administrative Judge (AJ) issued a decision in EEOC No. 100-2005-00029X. *See generally Exhibit D, Hearing Decision.*

18.    The Agency issued its Final Order on September 15, 2006, which fully implemented the AJ's decision, and administratively closed Agency Case No. CRSD-2004-00103 based on Plaintiff's voluntary withdrawal of her retaliation claims at the hearing. *See Exhibit E, Agency's Final Orders for Agency Case Nos. CRSD-2003-00042 and CRSD-2004-00103.*


Further, Declarant saith not.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed on this __7th__ day of June 2007.                    Jany W. Newell

# EXHIBIT A TO DECLARATION OF LARRY NEWELL

#030608
Original

# EEO COUNSELOR'S REPORT

# UNITED STATES
# DEPARTMENT OF AGRICULTURE

COUNSELING conducted by:



455 West Broadway
Boston, MA  02127

COMPLAINANT:          **WILMA BRADLEY**

DSZ FILE FOLDER:      **32275**


This document for OFFICIAL USE ONLY

It and its contents are not to be distributed
outside your agency, nor duplicated, without
prior clearance.

FOR OFFICE USE ONLY
Indefinite Retention\

# EEO COUNSELOR REPORT

Agency Informal Complaint Number:
ECD Formal Complaint Number:

Please check one of the following:    Individual Complaint [X]    Class Complaint [  ]

## COMPLAINANT INFORMATION:                    REPRESENTATIVE INFORMATION:

Name:                Bradley, Wilma, L.            N/A

Title/Series/Grade:  Correspondence
                     Review Officer
Agency Address:      14th & Independence Ave. SW.
                     Washington DC

Work Telephone:      202-720-1562

Home Telephone:      

Home Fax Number      ███████

E-Mail Address:

Anonymity Requested: Yes [  ]   No [X]

Choice between ADR and Counseling: (Check the appropriate box.)

ADR [  ]            Counseling [X] If counseling, check the box below if counseling
                    was extended, in writing. [  ]

## CHRONOLOGY OF COUNSELING ACTIVITY:

Date of Initial Contact:                                             June 12, 2003
Date of Initial Interview:                                          July 2, 2003
Date of Most Recent Alleged Discriminating Event:                   May 1, 2003
Date Complainant Became Aware of Most Recent Event:                 May 1, 2003
45th Day After Complainant Became Aware of Most Recent Event:       June 15, 2003
Explanation for Delay Beyond 45 Days (w/supporting documents):      N/A
Date of Final Interview:                                            August 11, 2003
Date Notice of Right to File (NRF) Issued:                          August 11, 2003
Date Complainant Received NRF via Certified Mail:                   N/A
Certified Return Receipt Article Number:                            N/A
Date Complainant Signed Written Receipt for NRF (if hand-delivered): August 12, 2003
Date of Formal Complaint:                                           -

**COMPLAINT INFORMATION:**

Issue:   The aggrieved party, Wilma Bradley, alleges that she was subjected to discrimination, in the course of her employment, when she was not selected for Vacancy Announcement OES-02-03, Lead Correspondence Review Specialist.

Basis: Age (48), Reprisal (prior EEO activity), Sex (Female), Race (Black)

Date of Issue:   The aggrieved party, Wilma Bradley, stated that on May 1, 2003, her supervisor, Bruce Bundick, informed her that she was not selected for the Lead Correspondence Review Specialist position she applied for.

Have the same complaint issue(s) been raised in either of the following forums?

[  ] Yes.  If yes, check appropriate box below and indicate date of filing.     No [ X ]

|  |  | Date Filed |
|---|---|---|
| [  ] Negotiated Grievance (with supporting documentation) | | _____ |
| [  ] MSPB Appeal (with supporting documentation) | | _____ |
| [  ] Prior EEO Complaint(s) (with supporting documentation) | | _____ |
| [  ] Civil Action (with supporting documentation) | | _____ |

**RESPONDING MANAGEMENT OFFICIAL (RMO) INFORMATION:**

| Name (Last, First, MI)/Title: | Bundick, Bruce |
|---|---|
| Agency/Address: | USDA |
| Work Telephone Number: | 202.720.6630 |
| E-Mail Address: | Bruce.Bundick2@usda.gov |
| Relationship to Complainant/Issue: | Immediate Supervisor |

**INDIVIDUAL(S) CONTACTED DURING INQUIRY:**

| Name/Title: | Bruce Bundick |
|---|---|
| Telephone Number: | 202.720.6630 |
| Relationship to Complainant/Issue: | Immediate Supervisor |

| Name/Title: | Ruby Goodman |
|---|---|
| Telephone Number: | 202.720.1568 |
| Relationship to Complainant/Issue: | Co-worker |

| Name/Title: | Doris Kitchings |
|---|---|
| Telephone Number: | 202.720.0030 |
| Relationship to Complainant/Issue: | Previous Supervisor |

| Name/Title: | Betty Jenkins |
|---|---|
| Telephone Number: | 202.720.1565 |
| Relationship to Complainant/Issue: | Co-worker |

2

**SUMMARY OF FACTS DEVELOPED IN THE INQUIRY:**

The Aggrieved, Wilma Bradley

On July 2, 2003, this EEO Counselor conducted the initial interview of Wilma Bradley in the library at the United States Department of Agriculture. After the initial introductions, I provided Ms. Bradley with two copies of the Notice of Rights and Responsibilities and the Initial Identification of Claim and ADR Election Notice. Ms. Bradley reviewed and signed each document in the appropriate place. I retained one copy of each document for my records and she retained the other set.

At this point, Ms. Bradley began to share with me her reasons for filing this informal complaint. She said she applied for Vacancy Announcement GS-0301-12, Lead Correspondence Review Specialist, which closed on August 19, 2002. On May 1, 2003, Bruce Bundick informed her that she was not selected for the position. Ms. Bradley stated that she is a (55) fifty-five year old, African American female and she believes that she was discriminated against when she was not selected. She stated that she has been employed with the Office of the Executive Secretariat (OES) for approximately nine (9) years, and she believes she is more than qualified for the position.

Ms. Bradley stated that Mr. Bundick was aware of her EEO complaint when he selected Cynthia Briggs for the position. She stated that "Bruce Bundick had no intentions of hiring me." Ms. Bradley stated that Bruce Bundick informed her that Ms. Briggs had "stronger" leadership skills. Ms. Bradley stated she would like to know, "Had he worked with her, in order to know first hand that she had 'stronger' leadership skills?" In addition, Ms. Bradley stated that Mr. Bundick told her that Ms. Briggs is "what he is looking for."

Ms. Bradley further stated that she heard Mr. Bundick made comments, to his former Deputy Director, Doris Kitchings, concerning the attitude and performance of the OES staff. Ms. Bradley stated that Mr. Bundick told Ms. Kitchings that the OES staff are "poor performers, no sense of urgency, no commitment to service, only a few with good attitudes, not given to good work practices, and need to sweep the place clean or change attitudes." Ms. Bradley stated Mr. Bundick has also said that, in his effort to "sweep the place clean," he was not going to do anything "for the people in the back." Ms. Bradley stated that she is one of those "people in the back."

In order to resolve her informal complaint, Ms. Bradley informed this EEO Counselor that she would like a promotion to the Lead Correspondence Review Specialist position (GS-0301-12) retroactive to the date of her application. In the alternative, Ms. Bradley stated that she would like a position equivalent to the GS-12 position she applied for, or a permanent reassignment at the GS-12 grade level or its equivalent.

Bruce Bundick

On July 21, 2003, I interviewed Bruce Bundick, Director, Office of the Executive Secretariat, regarding the allegations and resolution requests contained in Ms. Bradley's informal EEO complaint. After the initial introductions, Mr. Bundick began to provide his responses to Ms. Bradley's allegations.

By way of background, Mr. Bundick stated he began working as the Acting Director, Office of the Executive Secretariat, in June 2000, and in October 2002, he officially began work as the Director. Prior to his current position, Mr. Bundick stated he was the Correspondence Manager for the Forest Service.

When this EEO Counselor asked Mr. Bundick the reason Ms. Bradley was not selected for the Lead Correspondence Review Specialist position, he stated that her age, race, sex or gender, "had nothing to do with it." He stated, "If race and age were factors, Cynthia Briggs [the person selected for the position] would not have been chosen." Mr. Bundick stated that Ms. Briggs is an African American female, and he selected her because he believed she was a better candidate.

In an effort to explain the selection process, Mr. Bundick stated that more than one Certificate of Eligibles was presented to him. He stated that his office "was filling six (6) jobs at the time." He stated that the following Certificates were presented to him to select a candidate for the GS-0301-12, Lead Correspondence Review Specialist under Vacancy Announcement OES-02-03:

> One Certificate containing lateral candidates
> One Certificate containing in-house candidates
> One Certificate containing outside or external candidates

Mr. Bundick stated that Cynthia Briggs was on the list for external candidates and Ms. Bradley was on the list of internal candidates. Mr. Bundick stated that he is not sure if he is using the correct terms to describe the types of Certificates. However, he believes that there were three lists containing internal, external and lateral candidates.

In reference to Ms. Bradley's allegations concerning comments he allegedly made, Mr. Bundick stated, "I don't recall, specifically, making those comments." However, he stated, "I have not been happy with our performance and I have been working hard to try to improve that." Mr. Bundick stated that, among the positions his office filled, there were five internal employees who applied for the positions and only one of the five internal employees received the position they applied for. He stated, "I definitely put people on notice that I was not satisfied with the quality and quantity of work our office was producing." He stated that he did not know who had applied for the announced positions until "Personnel put together the list [Certificate of Eligibles]." Mr. Bundick stated that the "first cut" was done by a "Subject Matter Specialist," Tavia Hollenkamp. He stated, for this position, Human Resources used a Subject Matter Specialist instead of a panel.

In reference to the process used to select the candidate, Mr. Bundick stated, "It was awful, but that was not anything we engineered. We advertised the job in July 2002 and closed it August 18, 2002. It took a long time to get the Certificate together." Mr. Bundick stated that the Certificate of Eligibles was not prepared until the spring of 2003. He stated that after the Certificate was prepared, he began to interview candidates for the position. However, after he began interviewing candidates, Personnel withdrew the Certificate, because Human Resources discovered that the Subject Matter Specialist did not use the correct criteria when ranking the applicants. Therefore, the Subject Matter Specialist prepared a second Certificate using the correct criteria. Mr. Bundick stated that the two lists were not the same. He said the rankings were different. However, he stated the same person, Tavia Hollenkamp, did the rankings. Mr. Bundick stated that Ms. Bradley was not on the first Certificate of Eligibles; however, she was on the second Certificate. He stated, "Some candidates that appeared on the first Certificate did not appear on the second Certificate, and vice versa." He stated that once he had the second list and resumed interviewing, Ms. Bradley was called in for an interview.

Mr. Bundick stated that Cynthia Briggs was an Administrative Assistant, a female, and, he believed, about the same age as Ms. Bradley. He stated that Ms. Briggs worked at Amtrak as a Correspondence Manager.

In response to Ms. Bradley question, "Had he worked with her, in order to know first hand that she had 'stronger' leadership skills than me?" Mr. Bundick stated that he did not know Ms. Briggs prior to her application for the position. He stated that the first time he met her was when she came for the interview. He said he knew, based on her application and interview, that she had strong work experience. He stated, "It was a judgment call based on her responses to questions and comments."

Regarding Ms. Bradley's allegation that Mr. Bundick told her that, "Ms. Briggs is 'what he was looking for.'" Mr. Briggs stated, "Well, that's not quite how I phrased it."

Mr. Bundick stated that he wanted to tell Ms. Bradley that he had selected another candidate for the position before she found out from another source. However, he stated that she found out "somehow" from Personnel. He stated, "I was trying to play it straight and by the book. Unfortunately Personnel told people before they told me; therefore, they did not give me an opportunity to tell Ms. Bradley myself." Mr. Bundick stated that he usually speaks to the applicants first. He stated, "Once I have confirmation from Personnel that the candidate accepted the position, then I tell the in-house people that applied that someone else was selected." Mr. Bundick stated that he informs the in-house applicants before he announces the name of the person he selected.

Ruby Goodman

On July 30, 2003 at 8:15 p.m., I conducted the telephone interview of Ruby Goodman. After the initial introductions, I informed Ms. Goodman that I was contacting her at the request of Ms. Bradley.

Ms. Goodman informed this EEO Counselor that she is a Correspondence Review Officer, and she works in the office with Ms. Bradley. Ms. Goodman stated that her desk is "next to" Ms. Bradley's.

Ms. Goodman stated that she has known Ms. Bradley for approximately 7-8 years. She stated that Ms. Bradley is her co-worker; they have the same title and position description, Correspondence Review Officer, and "they do the same type of work."

Regarding Ms. Bradley's abilities as a Correspondence Review Officer and her work ethic, Ms. Goodman stated, "Ms. Bradley is a very good worker, and, in my opinion, she knows her current position very well." Ms. Goodman stated, "She is very dependable. She is the type of employee that is very assertive. She is persistent in a good way. If she does not know the answer, she will dig, dig, dig until she finds out."

Betty Jenkins

On August 5, 2003 at 7:30 a.m., I conducted the telephone interview of Betty Jenkins. After the initial introductions, I informed Ms. Jenkins that I was contacting her at the request of Ms. Bradley.

Ms. Jenkins informed this EEO Counselor that she is a Correspondence Review Officer, and she is the same grade as Ms. Bradley. Ms. Jenkins said she works in the office with Ms. Bradley; however, her desk is "on the other side of the room" from Ms. Bradley's.

Ms. Jenkins stated that Mr. Bundick is her second or third line supervisor. She stated that she has not heard that Mr. Bundick said, "He plans on sweeping the place clean." However, she stated, that Ms. Bradley told her that he made the statement.

In reference to her work relationship with Ms. Bradley, Ms. Jenkins stated, "We back each other up. When she is out of the office, I back her up, and vice versa."

Ms. Jenkins stated she has had the opportunity to observe Ms. Bradley in the work place, and "Wilma works very well. She does a very good job."

<u>Doris Kitchings</u>

On August 1, 2003 at 12:30 p.m., I conducted the telephonic interview of Doris Kitchings. After the initial introductions, I informed Ms. Kitchings that I was contacting her at the request of Ms. Bradley.

Ms. Kitchings informed this EEO Counselor that she is, currently, a Senior Correspondence Analyst. She stated that that she has known Ms. Bradley since March of 1998. Ms. Kitchings informed this EEO Counselor that she supervised Ms. Bradley from 1998-2002.

In response to the question, "In her opinion, does she believe Ms. Bradley is qualified for the Lead Correspondence Review Specialist, Ms. Kitchings stated, "Yes. I believe she would have been able to make the best qualified list, and I believe she did." Ms. Kitchings continued, "She and others in that office were qualified for the position. I don't know if they [the others] applied."

By way of background, Ms. Kitchings stated, "I worked in that office for 32 years. People in that office believe that longevity qualifies you for a job, and that's not necessarily true. There are other qualified people in the world with the skills and a lot to offer." Ms. Kitchings continued, "I am not saying she does not have it, but there is some tough competition out there." Ms. Kitchings stated, "I know that she knows her job and she is very organized." However, Ms. Kitchings stated, "You don't have to know a job to do a job. You can learn all that."

Regarding whether Ms. Bradley was the best qualified for the position, Ms. Kitchings stated, "I did not see the other applications and did not interview anyone. I would have to see the other applicants' credentials to make a determination." She stated, "I barely know the name of the person who was selected."

**RELIEF REQUESTED AND SUMMARY OF RESOLUTION EFFORTS:**

In order to resolve her informal complaint, Ms. Bradley informed this EEO Counselor that she would like a promotion to the Lead Correspondence Review Specialist position (Vacancy Announcement GS-0301-12), retroactive to the date of her application. In the alternative, Ms. Bradley stated that she would like a position equivalent to the GS-12 position she applied for, or a permanent reassignment, at the GS-12 grade level or its equivalent.

In an effort to resolve this informal complaint, this EEO Counselor interviewed Bruce Bundick, Director, Office of the Executive Secretariat, on July 21, 2003. In response to Ms. Bradley's resolution requests, Mr. Bundick stated that the position Ms. Bradley applied for had been filled with the best-qualified applicant.

In addition, Mr. Bundick provided this EEO Counselor with information on the process utilized to fill the vacancy.

In an effort to obtain a copy of the Certificate of Eligibles, this EEO Counselor contacted Lynnie Jones, in Human Resources, on July 21, 2003. Ms. Jones instructed me to contact Nikkita Cloyd, in Employee Relations. Ms. Cloyd informed me that I must submit an Authorization Sheet, in order to obtain the Certificate. Therefore, on July 23, 2003, this EEO Counselor contacted Rondi Hammond, the On-Site EEO Contact listed for this case. Ms. Hammond referred me to Diane Davis-Wright. Ms. Davis-Wright informed me that the EEO Specialist who usually handles the EEO counselings was on vacation.

On August 11, 2003, this EEO Counselor contacted Ms. Bradley and provided her with the status of her case. Ms. Bradley instructed me to fax her Notice of Final Interview, and provided her fax number (301.782.7950). Therefore, this EEO Counselor faxed the Notice, following our conversation.

**COUNSELOR INFORMATION:**

| | |
|---|---|
| Name: | Danee C. Gaines |
| Agency: | DSZ |
| Telephone Number: | 703.528.4921 |
| Fax Number: | 703.243.5250 |
| E-Mail Address: | daneegaines@earthlink.com |

Signature _Danee C. Gaines /mej_     Date _August 18, 2003_

# EXHIBIT B TO DECLARATION OF LARRY NEWELL

# EEO COUNSELOR'S REPORT

## UNITED STATES DEPARTMENT OF AGRICULTURE

COUNSELING conducted by:     Elizabeth Leader



One Wadleigh Place
Boston, MA  02127

**COMPLAINANT:**          **WILMA BRADLEY**

**DSZ FILE FOLDER:**       **42278**

This document for <u>OFFICIAL USE ONLY</u>

It and its contents are not to be distributed
outside your agency, nor duplicated, without
prior clearance.

FOR OFFICE USE ONLY
<u>Indefinite Retention</u>

# EEO COUNSELOR REPORT
Agency Informal Complaint Number:
ECD Formal Complaint Number:

Please check one of the following:       Individual Complaint [ X ]       Class Complaint [   ]

**COMPLAINANT INFORMATION:**                    **REPRESENTATIVE INFORMATION:**

Name (Last, First, MI):  Wilma Bradley          Name (Last, First, MI): None

Title/Series/Grade: Correspondence Review Officer,     Title:
              GS-301-11
Agency Address: Office of Executive Secretariat (OES)  Address:
            USDA
Work Telephone: (202) 720-1562                  Telephone Number:

Home Telephone: (███████████              Fax Number:

E-Mail Address: Wilma.Bradley@usda.gov          E-Mail Address:

                                   Attorney? Yes [   ]   No [   ]

Anonymity Requested: Yes [   ]  No [ X ]

Choice between ADR and Counseling: (Check the appropriate box.)

ADR [   ]              Counseling [ X ]  If counseling, check the box below if counseling
                     was extended, in writing. [   ]

**CHRONOLOGY OF COUNSELING ACTIVITY:**

Date of Initial Contact: June 22, 2004
Date of Initial Interview: June 29, 2004
Date of Most Recent Alleged Discriminating Event: June 15, 2004
Date Complainant Became Aware of Most Recent Event: June 15, 2004
45th Day After Complainant Became Aware of Most Recent Event: July 30, 2004
Explanation for Delay Beyond 45 Days (w/supporting documents): N/A
Date of Final Interview: July 14, 2004
Date Notice of Right to File (NRF) Issued: July 14, 2004
Date Complainant Received NRF via Certified Mail: N/A (issued via Complainant's home fax)
Certified Return Receipt Article Number: N/A
Date Complainant Signed Written Receipt for NRF (if hand-delivered): July 14, 2004
Date of Formal Complaint:

**COMPLAINT INFORMATION:**

Issue (Precise Description): Disparate treatment (see below)
Basis: Reprisal (formal complaint filed June 12, 2003)
Date of Issue: continuing, including most recently on June 15, 2004

The Complainant alleges that in reprisal for prior protected EEO activity (formal complaint filed June 12, 2003), she has been denied performance awards on a continuing basis, including in December 2003, and most recently on June 15, 2004.

Have the same complaint issue(s) been raised in either of the following forums?

[  ] Yes.  If yes, check appropriate box below and indicate date of filing.     No [ X ]

                                                                                        Date Filed

    [  ] Negotiated Grievance (with supporting documentation)          _____
    [  ] MSPB Appeal (with supporting documentation)                   _____
    [  ] Prior EEO Complaint(s) (with supporting documentation)        _____
    [  ] Civil Action (with supporting documentation)                 _____

**RESPONDING MANAGEMENT OFFICIAL (RMO) INFORMATION:**

Name (Last, First, MI)/Title: Bundick, Bruce, Director, GS-301-15, OES,
Agency/Address: OES, 1400 Independence Avenue, SW, Room 116A,Washington, DC 21515
Work Telephone Number: (202) 720-7100
E-Mail Address: Bruce.Bundick@usda.gov
Relationship to Complainant/Issue: In management chain/helped make decisions at issue

Name (Last, First, MI)/Title: Mary Ann Swigart, Deputy Director, GS-301-14, OES,
Agency/Address: OES, 1400 Independence Avenue, SW, Room 116A,Washington, DC 21515
Work Telephone Number: (202) 720-7100
E-Mail Address: MaryAnn.Swigart@usda.gov
Relationship to Complainant/Issue: In management chain/helped make decisions at issue

**INDIVIDUAL(S) CONTACTED DURING INQUIRY:**

Name (Last, First, MI)/Title: Ngozi Abolarin, Associate Deputy Director, GS-301-13, OES,
Agency/Address: OES, 1400 Independence Avenue, SW, Room 116A,Washington, DC 21515
Work Telephone Number: (202) 720-7100
E-Mail Address: Ngozi.Abolarin@usda.gov
Relationship to Complainant/Issue: Complainant's supervisor/helped make decisions at issue

**SUMMARY OF FACTS DEVELOPED IN THE INQUIRY:**

I received the counseling assignment on June 28, 2004, and conducted the initial interview on June 29, 2004.  The Complainant selected EEO counseling over ADR and waived her right to anonymity.  She verified the information in her Initial Intake form.  I provided the Complainant with the Notice of Rights and Responsibilities.  (Attachments 1-3)

2

The Complainant outlined the allegations as stated above and provided additional background information. She believed Bruce Bundick and Mary Ann Swigart were responsible for the award decisions at issue. She said her prior EEO complaint was against Mr. Bundick and she was sure he had told Ms. Swigart about it, as well as her supervisor, Ngozi Abolarin.

The Complainant stated that on June 15, 2004, many of her coworkers received awards signed by the Secretary of Agriculture. She said she did not receive a certificate or a monetary award at that time. She was not sure exactly what the awards were for. She stated Mr. Bundick said two of her coworkers, Betty Jenkins and Cynthia Briggs, received awards for their additional responsibilities. She explained that Ms. Jenkins was acting as Associate Deputy Director, under a temporary promotion. She was not sure what Ms. Briggs had done but believed Ms. Briggs and Ms. Jenkins had divided the duties of the Associate Deputy Director, who had been on maternity leave from January to June 21, 2004.

The Complainant contended she had also performed extra responsibilities and therefore should have also received an award. For instance, she said, she was asked to take over three agencies normally handled by Ruby Goodman, who was on sick leave. She said she began this on May 13, 2004, and said Ms. Goodman returned to work part time in May but said she (the Complainant) continues to cover these three agencies in addition to all her own work. She noted that after she had started to cover some of Ms. Goodman's agencies, Ms. Briggs told her that management was aware of what she was doing; however, in a follow-up conversation, the Complainant said she was certain this work would not receive recognition from management. In addition, she said on April 22, 2004, Ms. Briggs asked her to sit with an intern from AMS, Kevin, and explain the mail tracking process system and demonstrate her role when she receives correspondence, as well as how it's prepared and processed. She said Ms. Briggs said she asked her to do this because she "knew everything." She said she therefore spent an hour with Kevin. The Complainant stated that another example of an additional responsibility she performed was on April 29, 2004, when Ms. Briggs asked her to query the system for incoming letters dated around March 24, 2004, from a particular Congressman and Senator, because a request had come in for this and Ms. Briggs did not have time. In addition, she said she backed up Betty Jenkins for two weeks in June and will be doing so for two weeks in August and three weeks in December, while also covering three of Ms. Goodman's agencies. She explained that she and Ms. Jenkins are assigned to serve as each other's regular back-up.

The Complainant stated that she also did not receive any award when others received them in December 2003. She said it appeared management had planned to give the awards at a staff meeting the day before the Complainant left on scheduled leave, but delayed it a day so that it could be done when she was not there. She said some of her coworkers had this same impression and also thought she should have received an award. Among those who believed she should have received an award, she said, were Dewey Madison, Tina Lee (no longer with the organization), Janet Stewart, and Renee Cardwell. She did not know the reason given for any of the December awards as she was not present at the presentation.

The Complainant said virtually everyone who did not receive an award in December received one in June, except for her; Renee Cardwell, a Correspondence Review Officer (CRO) who had been on a detail for about nine months and had just returned; and Patrice Pettus-Lawrence, a File Clerk. She said Ms. Cardwell had also filed an EEO complaint. She did not know of any others in OES who had filed complaints. She explained that there are a number of GS-11 CROs in OES but said they all do different jobs; however, she also contended she did the same work as several of the other CROs. For instance, she said she and Ms. Jenkins, to her knowledge, do the same work. She stated Ms. Jenkins received awards both in December and June, as did Brad Eickholt, who is a CRO but does different work than she, and Cynthia Briggs, who is the Lead CRO. She stated Janet Stewart and she do the same work, yet Ms. Stewart received an award in December, as did Ruby Goodman. She said Dewey Madison, Computer Specialist, received an award in June.

3

The Complainant stated she had not asked management why she did not receive an award in June. She believed Ms. Briggs had put her name in for one, but was not sure. She noted that she has had no complaints about her work. She questioned why, if management did not believe she should be recognized for additional duties, they give her such duties.

As further background information, the Complainant noted that she did not receive an award for assisting on a special project involving new furniture for the office, even though Alison Warwick, detailed to OES to assist with this, had recommended an award. She said her prior complaint was amended to include this issue and said Mr. Bundick stated then that Ms. Swigart had determined no awards were warranted for this. However, the Complainant contended that Ms. Warwick had received money in her account from OES and did not know what it was for; the Complainant believed this was an award from OES.

The Complainant stated she has received awards previously. She said she got one during the time Mr. Bundick was detailed to OES and she helped him out a lot. In a follow-up, she explained that she received an award from Mr. Bundick in January 2002 and then received one signed by the Secretary in July 2003, shortly after she filed her complaint. She noted that everyone in OES, to her knowledge, received an award in July 2003. She did not know whether these awards had been recommended by Mr. Bundick or by someone on the Secretary's staff. She said both the December and June awards at issue here were also signed by the Secretary. She said the July 2003 award did not change her opinion that she had suffered reprisal, because everyone else in OES got those awards, while virtually everyone except her also got awards in December 2003 and/or June 2004. She did not believe anyone received an award between January 2002 and July 2003.

In a number of follow-up conversations, the Complainant provided additional background information and rebutted information provided by management. She underscored that everyone (virtually) received an award either in December or June, except for her, so she was sure she would not receive one in the future, despite management's saying they award special projects upon completion and despite the fact that she is still covering some of Ms. Goodman's agencies. She stated she does not know what her coworkers's responsibilities are, so she was not able to respond to whether certain tasks were beyond their normal duties, etc. She said her job is to be back-up to one person, not to Ms. Goodman or Ms. Briggs, nor is it her responsibility to spend an hour talking to an intern (Kevin), as she did. She brought up several times that management recently moved everyone away from her, except for the other coworker who had filed an EEO complaint, but did not want to add this as an issue to her complaint. She contended she should have received an award in December because she was doing the same things as the CROs who received awards and because she had trained them. She said Ms. Stewart and Ms. Goodman do not do extra responsibilities, but also reiterated that she does not know what they do. She contended that the December and June awards were issued to show what management will do for people who do not file complaints.

The Complainant provided specific rebuttal to the explanations provided for others awards. She contended Ms. Stewart did not help Ms. Goodman with the meetings for which Ms. Goodman received an award, and questioned when this was said to have occurred. She said Ms. Stewart had told her she did not know why she received an award in December. The Complainant said she herself had been meeting with people even before Ms. Abolarin arrived in the organization. She added that she does not meet for the sake of meeting, but rather, talks on the phone with her people, some of whom are in Virginia. She contended Ms. Abolarin and Mr. Bundick do not know when she has these contacts because most are by phone. She also stated it is part of her job to meet with people at high levels, and she does so, but does not tell management. The Complainant also questioned when Ms. Goodman's meetings were held because she believed they may have occurred so far before December that they should not have been

4

awarded in December. She contended that they had to have been held before September 10, 2003. Furthermore, she questioned what Ms. Goodman covered in the meetings, because now, as the Complainant is covering some of Ms. Goodman's agencies, she is getting basic procedural questions from them for which they should already know the answers. She said she is not contending Ms. Goodman should not have received an award, but rather just raising this question. The Complainant also asserted that in either 2002 or 2003, Mr. Bundick received at least one e-mail from the Correspondence Control Officer of another agency, Sandy Staciak, saying how much they appreciated the Complainant. She said Ms. Staciak told Mr. Bundick to let the Complainant know, but he did not. The Complainant denied ever telling Ms. Abolarin she was not a team player. She said because Mr. Bundick hired someone from outside over people who had been in OES nine or ten years (the selection at issue of her prior complaint), she had remarked, at a meeting called by Ms. Swigart, that she had been, but was no longer, a team player; however, she said Ms. Abolarin was not at this meeting. She noted that Ms. Swigart had called this meeting because she said they were all hostile employees. She denied ever saying she would do nothing more than was required. She stated she has done more, on many occasions, such as serving as Acting Director when Mr. Bundick was out.

As for training, the Complainant contended she trained Ms. Stewart and Ms. Goodman. In response to the question as to whether she provided this training during the periods covered by either award cycle, she responded that Ms. Stewart and Ms. Goodman did not do anything outstanding. As to training/helping the document control technicians (a stated basis for Ms. Jenkins' December award), the Complainant stated since she was not selected for the position at issue in her former complaint, the technicians should go to the supervisor or to Ms. Swigart to get answers, and asked, if Ms. Abolarin is their supervisor, why isn't she training them? She said she also used to answer the technicians questions in addition to Ms. Jenkins doing so. She said she created a checklist for them in February 2002 and trained them at that time regarding processing non-priority letters. She said she did not receive an award for this. She contended she could have been awarded for this in December 2003, since Ms. Abolarin received an award at that time for work she had completed in February 2003. The Complainant also contended that if Ms. Jenkins is still helping to answer the technicians' questions, then this special project is not yet completed and should not, per Mr. Bundick's remarks, be recognized yet.

As to Ms. Briggs' alleged special project of preparing a briefing packet for the Secretary, the Complainant stated she did these as a GS-5 secretary, years ago, for the Secretary's office; specifically, she said she was the coordinator of packages and was responsible for managing them. She said she did receive recognition for this work. The Complainant disputed management's assertion that everyone was helping with Ms. Goodman's work, saying just she and Ms. Stewart are doing it. Further, she questioned why Tina Wimbush and Marge Harter , had received awards when they been in OES less than one year. In contrast, she said she had been there many years. In addition, the Complainant stated that on March 20, 2003, Ms. Abolarin asked her to write a list of the problems they have had with the mail-tracking system so the new computer system could alleviate these problems, and she prepared an e-mail identifying about 18 items and listing what was needed for a more efficient system. She did not know whether other CROs made such lists. The Complainant stated, as to Kenny Phifer's award, that according to Ms. Pettus-Lawrence, he did not volunteer to back her up but rather, was asked by Ms. Abolarin to do so, and therefore should not have received an award for this. She also contended Ms. Abolarin lied in stating he volunteered to do this. As to the lack of an award for her work on the furniture project, she believed this project involved more than one day or at least the equivalent of more, explaining she went out to look at furniture, but also met to discuss how to arrange it and met with Mr. Bundick.

The Complainant stated she does her job, everything that is required, and management stays away from her. She said if management is not going to recognize her, they should not ask her to do things they won't recognize her for.

5

The Complainant stated Ms. Stewart said, in a meeting with Ms. Swigart, that Mr. Bundick is racist, and she got an award. She said Ms. Stewart had not complained to EEO.

On July 1, 2004, I interviewed Mary Ann Swigart, Deputy Director, GS-301-14, OES, (202) 720-7100. She denied any retaliation. She acknowledged knowledge of the Complainant's prior complaint. She said she and the Director, Bruce Bundick, jointly decided who was to receive awards in June. She believed that in December, they followed their normal practice of having their three-person management team, which also includes Ngozi Abolarin, the Associate Deputy Director, make the award decisions, but said Ms. Abolarin was out ill when she and Mr. Bundick made the decisions in June.

Ms. Swigart stated they gave seven awards in June 2004. She said three went to the three members of the Document Control Unit, because these three employees had significantly increased production and really began working as a team, blossoming as a group and as individuals in the work they were doing. She said they had all been working overtime to retire/close old files and give attention to tasks that OES had not had time to address. She said they also answer the phones until those responsible for phones arrive in the morning, and do so cheerfully. Ms. Swigart stated that, in addition, an information technology (IT) employee received an award for working on a very difficult hardware and software process that involved lots of extra hours and weekends. She said this employee is half of a two-person team, but the other person had been out due to an accident since March 15, 2004, and just recently returned on a limited basis, so the IT employee has also been doing the work of two. She said similarly, an award was given to an employee who works the front desk. She said this is normally a two-person function, but one of the two has been very ill since October 2003 and was gone as much as 70% of the time (now out about 40% of the time). In addition, she said, in late December, the Mad Cow disease issue arose and this generated lots of mail including thousands of e-mails. She said the front desk award recipient not only did his normal job and covered for his absent co-worker, but also handled the floods of e-mail regarding Mad Cow disease. Specifically, she said he did thousands of auto-reply e-mails and worked with two agencies to be sure the appropriate responses were issued, thereby alleviating the need for individual responses to thousands of e-mails. She said he also handled hot issue responses as an extra task, did six-month summaries of them, and acquired as an extra duty the management of two websites. Finally, Ms. Swigart stated that two CROs, one of whom is the Lead CRO, received awards. She said the Associate Deputy Director, who is the first-line supervisor for most of the office, was out for six months and the Director has been working on a special project, so Ms. Swigart asked the Lead CRO to supervise four employees, without an increase in pay, and gave a temporary promotion to another CRO to supervise six other employees. She said the temporary promotion was competed and the selectee was the only candidate. She said both of these CROs did their own jobs in addition to doing this extra work for about four and a half months. In addition, she said the Lead CRO did all the correspondence work for an employee who was on a nine-month detail and said everyone, including these two CROs, helped cover for an employee who had been out since mid-March.

Ms. Swigart stated the Complainant did not receive an award because management only gave awards to people doing over and above their regular duties for an extended period. She acknowledged that people do back up each other, but said everyone does this as part of their job expectations. For example, she said, when the Complainant was out, she was backed up by others who did not receive awards for this. She said she was looking at four plus months of constant extra effort above what was expected of one's job. As to the coverage for Ms. Goodman, she said Janet Stewart had been doing all of this and was overwhelmed, so the Complainant was asked to do three agencies. She said Ms. Stewart did not receive an award either, for the two plus months that she covered for Ms. Goodman. She noted that Ms. Stewart also continues to do some of Ms. Goodman's agencies.

6

Ms. Swigart stated she was not as involved in the decisions regarding the December awards and said Ms. Abolarin would have more specific information about these.

Ms. Swigart stated, regarding the furniture project, that she did not believe the work rose to the level to warrant an award. She said the Complainant went shopping one day to help select furniture, and said this was not enough for an award. She denied that Ms. Warwick received an award from OES, and subsequently called to say she had verified this with Personnel, who noted Ms. Warwick did receive a small award from her own office in July 2003.

On July 6, 2004, I interviewed Bruce Bundick, Director, GS-301-15, OES, (202) 720-7100. He denied any retaliation. He stated the Complainant has received an award since the furniture project and said her most recent award was in July 2003 and was signed by the Secretary at management's request. He said this last award was an individual award, but a large number of employees received this same award for the same work, including at least all the CROs and possibly everyone in OES except him.

Mr. Bundick said management works hard to make sure awards are given to recognize exceptional performance, rather than taking the approach of "when it's your turn, you get one." He said to his recollection, all the CROs who received awards had done special things the Complainant had not done. For example, he said, two held special meetings with the agencies for which they serve as liaison, while the Complainant did not do this. He said management got excellent comments back about these meetings. He was not aware of the Complainant training coworkers, but said this is not to say she hasn't. He said one can see Ms. Jenkins doing this all the time and she is more than willing and does it of her own initiative. He also noted that this resulted in her being selected for temporary promotion.

Mr. Bundick responded to some of the Complainant's contentions about her performance, as well. He said others are also covering part of Ms. Goodman's job, including Ms. Briggs, and said this work was dispersed across the entire group and was not a lot of work. He said they assign work as fairly as they can. He said the work the Complainant described doing for Ms. Briggs, involving correspondence of a Congressman and a Senator on a given day, was not a special project. He said this would have taken about 15 minutes, because one can look up their names in the system; i.e., the "brain work" has already been done (in the system) and the scope was very limited. In contrast, he said Ms. Briggs briefing project required identifying a lot more correspondence and being very creative in how to search the system to identify it and then, how to organize the correspondence. He said the Secretary needed to know what issues were being raised by people in the area in which she would be traveling, such as Iowa, but one can't just look up "Iowa" in the system, so the CRO has to make connections from the correspondence and build a briefing book. He said this all has to be done without a lot of lead time, using a lot of judgment, hard work, and creativity. Mr. Bundick stated the Complainant has said publicly several times that she would do nothing more than was required. He said these remarks started around June 2000, shortly after his arrival, and in all instances, were made before her prior complaint.

Mr. Bundick reiterated that there are good, performance-based reasons for all the awards. He said the people they recognize are the ones who, when finished their work, ask what else they can do. He noted that the Complainant was not the only one disappointed in June. He also stated management normally recognizes special efforts at the point of completion.

Mr. Bundick stated that of those on staff now, one employee who filed a prior complaint did get an award; he believed, but was not sure, that the award came after the complaint. In a follow-up conversation, he recalled that a second employee had filed an informal EEO complaint and had also received an award in June, after having filed. He believed Ms. Stewart's accusation of racism was made after she received her last award, however.

7

Mr. Bundick said they did not try to issue the December awards when the Complainant was not there. He said there was a lot of reshuffling because of illness and trying to get a day when the most people would be present. He said they may also have changed the date because of the schedule of his boss, who handed out the awards, but he could not recall. He also denied that certain employees were moved because of the Complainant's prior EEO complaint and said management issued a memo to staff explaining their reasons.

On July 2, 2004, I interviewed Ngozi Abolarin, Associate Deputy Director, GS-301-13, OES, (202) 720-7100. She stated that she made the decisions regarding the December awards, with a few exceptions such as her award, and denied any retaliation. She said twelve awards were given at that time, including one to her. She said the Complainant did not receive an award because the employees receiving them had done something over and above their routine duties. She said although the Complainant does an outstanding job, she did not go over and above. She said most of those receiving awards had done special projects of varying lengths, outside their regular tasks.

Ms. Abolarin said four CROs, including the Lead CRO, received awards in December. She said Janet Stewart received an award for team work, in that she had encouraged and assisted Ruby Goodman, who was new, with her initial meetings with her agencies. When asked if the Complainant also provided team work, she said the Complainant had told her and others before the December awards that she was not a team player and is only concerned with herself, not others. She said Ruby Goodman received an award because of enhanced efforts meeting with key individuals in her agencies. She said Ms. Goodman went to her agencies and held informational meetings and that her management received e-mail praise from the agencies for the meetings. She noted that it was clear from the e-mails that Ms. Goodman had talked with people way above her level. In addition, she said Ms. Goodman went "over and above" in doing this work, such as by putting together informational packets. Ms. Abolarin was not aware of the Complainant doing similar work, and reiterated that she knew of Ms. Goodman's performance and awarded it because of the e-mails that were received praising this work. Ms. Abolarin stated Betty Jenkins was another CRO who was awarded in December. She said Ms. Jenkins handled special assignments, though she could not now recall what they were, and trained the document control technicians regarding where to send certain correspondence. She said the training was on-going in that the technicians came to Ms. Jenkins with questions as needed. She did not know of the Complainant training people and said if she did, she did so on her own accord and not because she was asked to. However, she also contended the technicians had asked the Complainant questions and she refused to answer and said not to ask her any more. Finally, Ms. Abolarin said the Lead CRO, Cynthia Briggs, received an award for special projects that were not part of her regular job. She said one example was that she responded to a briefing request by the Secretary prior to travel. She said Ms. Briggs had to identify correspondence received from a group within a given period of time and prepare a briefing packet. As to whether the assistance the Complainant provided Ms. Briggs in pulling correspondence by a Congressman and Senator from a given date was also a special project, she said if she was looking for particular correspondence, that is within her job, but she did not know enough about this specific example to say if it was a special project.

As to the Complainant's contention that the December awards were intentionally given on a day when she was on leave, Ms. Abolarin stated the presentation was scheduled according to management's own schedule and noted that several people receiving awards also were not there. She said they were just trying to recognize people doing exceptional work. She said no one suggested the Complainant should not receive an award and she had no reason to believe the Complainant had been the victim of retaliation.

In a follow-up conversation on July 8, 2004, Ms. Abolarin stated they did not consider whether people had been in OES less than one year in making awards. Rather, she said, they looked at their performance

levels and said everyone was awarded for different reasons and timeframes because the awards were based on specific projects that took place at different times during the period between the time the last awards had been given and December 2003. She said awards are not just given for regular work performance or because someone has been there longer than others. She also contended the Complainant seemed to believe that just answering questions from coworkers constitutes training, but said this is not true. She said Ms. Jenkins was training people outside her job. As to Complainant's asking why Ms. Abolarin was not training the technicians, she said it is management's prerogative to decide how things are to be done and declined to comment further on this.

Ms. Abolarin identified the reasons for the remaining awards issued in December. She said Kenny Phifer had backed up Ms. Pettus-Lawrence for a specific period. She said he did not normally back her up, because he was not caught up enough, but he had gotten caught up and volunteered to back her up, and did a good job. She said Tina Wimbush got an award because she was new and her job was to oversee the front desk, but she took on the additional job, on her own initiative, of overseeing the student intern on an on-going basis, and she did an outstanding job. She said because of this, Ms. Abolarin did not have to monitor their work as closely. She said Marge Harter, a Writer/Editor, was recommended for an award by Mr. Bundick and Ms. Swigart for special projects. She did not have specific information on this. She said Kwame Lake, a student, received an award because one day after Ms. Swigart and Ms. Abolarin were gone for the day, Mr. Bundick received a special request from the Secretary and Mr. Lake stayed late to help Mr. Bundick complete the project. She said this was way outside the scope of his normal duties, which consist of handling the phones and processing mail, and he stayed very late to help. She said Stacey Anderson, a Computer Specialist, received an award for ongoing processing of time and attendance, as needed, which is outside her normal duties. She said this is normally done by the Administrative Officer, but they did not have one for a time. Similarly, she said Stephanie Proctor, a Document Control Technician, helped with this when Ms. Anderson was not available, and therefore received an award.

Ms. Abolarin clarified that a few employees did receive awards for normal duties that were done exceptionally well, as opposed to special projects. For instance, she said Ms. Goodman, discussed above, received such an award, but noted this occurred because of the e-mails management received praising her work. She said Brad Eickholt received an award for something that is now part of his normal duties, i.e., preparing a weekly correspondence report for the Secretary, but she said this was something he created and developed that then became part of his work.

Ms. Abolarin stated her award was for work she had done prior to her promotion to supervisor in February 2003. Specifically, she said she had established and maintained personnel practices. She said she took the initiative to help Mr. Bundick fill vacancies, oversaw the front desk, supervised a temp, and developed a procedures manual for the front desk. As to why this was not awarded until December 2003, she believed the only award in the interim was in August 2003, when everyone in the office received an award.

As to whether she knew of the Complainant's EEO complaint when making the December award decisions, Ms. Abolarin stated she began considering who to award about three weeks prior to the awards being processed, but she did not recall whether she knew at that time of the Complainant's prior complaint. She said at some point, in passing, either Mr. Bundick or Ms. Swigart did mention the complaint to her, but she did not learn of it right away.

I left messages on voicemail for Janet Stewart, CRO, (202) 720-1574, on July 7, 8, and 13, 2004, and also called her on July 13 and 14, 2004, without leaving messages on her voicemail. Ms. Stewart never returned my messages, so I was unable to interview her.

9

**RELIEF REQUESTED AND SUMMARY OF RESOLUTION EFFORTS:**

As a remedy, the Complainant asked to receive monetary recognition and a certificate signed by the Secretary, comparable to the recognition received by others in OES. I discussed the question of resolution with Ms. Swigart and then, on two occasions, with Mr. Bundick. Management was not willing to agree to the remedy requested and was unable to identify a counteroffer at this time. I therefore concluded the counseling by conducting the final interview on July 14, 2004, and issued the Notice of Right to File by fax that day. (Attachment 4)

**COUNSELOR INFORMATION:**

| | |
|---|---|
| Name: | Elizabeth A. Leader |
| | Contract EEO Counselor |
| Agency: | DSZ |
| Telephone Number: | (703) 528-4921 |
| Fax Number: | (703) 243-5250 |

Signature: Elizabeth A. Leader

Date: 29 July 2004

# EXHIBIT 2

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**

United States Department of Agriculture
Civil Rights Employment Complaints and Adjudication Division

300 7th Street SW, Room #607
Washington, DC 20050

(MRS.)

**1.**  Name  (First)  (Mi.)  (Last)

[ ]Mr.  [ ]Miss _Wilma L. Bendley_    [ ]USDA Employee    [ ]USDA Applicant

**2.**  Address

_8300 Richard Court_
(Street)

_Brandywine MD 20613_
(City)        (State)  (Zip)

**3.**  Telephone Number

Work _(24) 720-1562_

Home _(30) 372-1720_

**4.**  Name of Agency Which You Believe Discriminated Against You

_The office of the Executive Secretariat_
(Office)

_Washington DC. 20250_
(City)              (State)                    (Zip)

**5.**  Bases of Discrimination on Which You Were Counseled (Do not include bases for which you did not receive counseling.) The bases are age, race, color, national origin, religion, sex, physical or mental disability, marital status, sexual orientation and reprisal. Be specific in your identification of bases (i.e., age (55), sex (female), race (white)).

_FORMER EEO Complaint filed 6/12/03_

**6.**  Issue(s) on Which You Were Counseled (Do not include issues or allegations for which you did not receive counseling. Provide, if you deem necessary, additional details on reverse side.) Be specific with exact issue and the date of the issue (i.e., Non-selection to Vacancy Announcement USDA-96-174, Secretary, GS-318-9, on March 1, 1996, or two day suspension for misconduct on January 29 & 30, 1996.) You do not need to elaborate on why you feel this was discriminatory, you will be given the opportunity to support your complaint during the investigation process.

_Denied awards on a continuing bases, including in December 2003, and most recently June 15, 2004._

**7.**  Representative, if any

_____    (   )
(Telephone Number)

(Street)                    (City)            (State)      (Zip)

**8.**  Name of EEO Counselor Contacted

_Elizabeth A. Leader_

**9.**  Requested Corrective Action

_Receive a monetary award & Certificate, comparable to my co-workers_

**10.**  Signature _Wilma L Bendley_    Date (Month) _7_  (Day) _15_  (Year) _04_

CMB
JUL 15 2004
#7501

_Rec'd 7-15-04_
_-Leader_

To: Rondi Hammond.

From: Wilma Bradley

2 pages including this page.

Please notify me when you receive
this information, if only to leave
a voice message. ~~####~~

                    Thank you

                    720-1562

Complaint No.: 04U504

# EXHIBIT 3

**Request for a Hearing Form**

Date: January 15, 2005

EEOC Hearing Unit
1801 L. St NW. _____ District/Field Office
Suite 100
Washington DC.

Dear Sir/Madam:

I am requesting the appointment of an Equal Employment Opportunity Commission Administrative Judge pursuant to 29 C.F.R. §1614.108 (g). I hereby certify that I have received notice from the agency that I have thirty (30) days to elect a hearing or a final agency decision.

My name:    WILMA L. BRADLEY

USDA Agency:    Office of The Executive Secretariat

USDA Complaint Nos.:    040565

In accordance with section 1614.108 (g), I hereby certify that I have sent a copy of this request for a hearing to the following address: YES

United States Department of Agriculture
Office of Civil Rights
Chief, Civil Rights Service Center
1400 Independence Avenue, S.W.  Mail Stop 9410
Washington, DC 20250-9410

I understand that if I have not provided the agency with a copy of my request for a hearing, this request will have no effect and an Administrative Judge will not be appointed, or if appointed, the Administrative Judge will place my request into an inactive docket until such time as I inform the agency of my request for hearing.

Sincerely,

Wilma L Bradley

JAN 21 2005
19360

# EXHIBIT 4

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

WASHINGTON FIELD OFFICE

+ + + + +

HEARING

+ + + + +

WILMA L. BRADLEY,

        Complainant,

    v.

MICHAEL JOHANNS,
SECRETARY, DEPARTMENT
OF AGRICULTURE,

        Agency.

EEOC No.
100-2005-00029X

Agency No.
USDACR 030608

### VOLUME I

Washington, D.C.
Tuesday,
June 20, 2006

U.S. Dept. of Agriculture
South Building, Room 1037
14th & Independence Ave, SW
Washington, D.C.  20250

    The above-entitled matter
commenced at 8:30 a.m.

BEFORE:

    ABIGAIL COLEMAN,
    Administrative Judge



**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433    WASHINGTON, D.C. 20005-3701    www.nealrgross.com

APPEARANCES:

On Behalf of the Complainant:

CAMILLA C. McKINNEY, ESQ.
ROSANNA C. LOPEZ, ESQ.
of:  Law   Offices   of   Camilla   C.
McKinney,   PLLC
1100 15th Street, N.W., Suite 300
Washington, D.C.  20005
-(202) 861-2934


On Behalf of the Agency:

LESLIE D. ALDERMAN, III, ESQ.
SUNDEEP HORA, ESQ.
of:  Alderman & Devorsetz, PLLC
The Blake Building
1025 Connecticut Avenue, N.W.
Suite 1000
Washington, D.C.  20036
(202) 969-8220

I-N-D-E-X

| WITNESSES: | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| Wilma Bradley | 11 | 154 | 202 | |
| Cynthia Briggs | 224 | 272 | | |
| Brad Eickholt | 276 | | | |
| Bruce Bundick | 287 | 384 | | |

OPENING STATEMENTS

None

CLOSING STATEMENTS

None

| EXHIBITS: | IDENTIFIED | RECEIVED |
|---|---|---|
| Complainant's No. 8 | | 35 |
| Complainant's Nos. 3-7 | | 39 |
| Complainant's No. 9 | 63 | 65 |
| Complainant's No. 13 | | 135 |
| Complainant's No. 15 | | 138 |
| Joint Exhibits Nos. 1-24 | | 166 |
| Complainant's No. 10 | | 233 |
| (selected portions) | | |
| Complainant's No. 10 | | 240 |
| (pages 9 through 20) | | |
| Complainant's No. 16 | | 430 |
| (pages 2 and 3) | | |

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433     WASHINGTON, D.C. 20005-3701     www.nealrgross.com

1          P-R-O-C-E-E-D-I-N-G-S

2                              (9:33 a.m.)

3          JUDGE COLEMAN:    I declare this

4    hearing open.

5          My name is Abigail Coleman.   I'm

6    an  Administrative  Judge  with  the  Equal

7    Employment Opportunity Commission, assigned to

8    conduct  a  hearing  on  the  discrimination

9    complaint filed by Wilma Bradley against the

10   U.S. Department of Agriculture.

11         The   complaint   before   me   is

12   identified as  EEOC  Number  100-2005-00029X,

13   Agency Number USDACR 030608.

14         In addition to the Court Reporter

15   and myself, present at today's hearing are the

16   following individuals:  the Complainant, Wilma

17   Bradley;  the  Complainant's  Representatives,

18   Camilla McKinney and Rosanna Lopez;  and the

19   Agency's Representatives, Leslie Alderman and

20   Sundeep Hora.

21         The hearing in this case will be

22   bifurcated, with the first portion addressing

1    liability only.  In the event that I conclude

2    the  Complainant  has  been  discriminated

3    against, a second hearing will be held

4    addressing the question of damages.

5             I will follow the Federal Rules of

6    Evidence  of  Civil  Procedure,  though  not

7    strictly,  since  this  is  an  administrative

8    hearing.   Therefore, I will generally admit

9    evidence that is relevant, material, and not

10   unduly repetitious, even though some of it may

11   constitute hearsay.

12            At the prehearing conference held

13   on June 1, 2006, the issues in this case were

14   defined  as  follows:     1)  whether  the

15   Complainant was discriminated against based on

16   her age when the Agency declined to select her

17   for the position of Lead Correspondence Review

18   Specialist, and 2) whether the Complainant was

19   retaliated  against  for  engaging  in  EEO

20   activity when the Agency declined to issue her

21   a monetary award.

22            As  clarified  at  the  prehearing

1    conference, the Complainant is pursuing her

2    claims on the bases of age and reprisal only,

3    notwithstanding that her formal complaint

4    indicates that the bases are age, race, sex,

5    and reprisal.  As further clarified at the

6    prehearing conference, with respect to the

7    first issue, the Complainant intends to rely

8    on other allegations, such as a denial of the

9    opportunity to attend top-level meetings or

10    obtain Top Secret clearance, as evidence in

11    support of the non-selection claim.

12          These other allegations are not to

13    be viewed as separate issues in and of

14    themselves, but rather as evidence in support

15    of the non-selection claim.

16          Do the parties have any objection

17    or any notes to make with regard to the issues

18    as framed?  Ms. McKinney?

19          MS. McKINNEY:    I think you've

20    stated it correctly.  We're not going to bring

21    the retaliation claim.

22          JUDGE COLEMAN:  Okay.  Thank you.

1          Mr. Alderman, or Mr. Hora?

2          MR. HORA:  Yes.  That was just --

3    you mentioned the retaliation claim, and that

4    was --

5          JUDGE COLEMAN:  Okay.  Very good.

6    So  we're  proceeding,  then,  on  the  non-

7    selection claim only, and we're not proceeding

8    with the retaliation claim.

9          Witnesses --  I have approved the

10   following witnesses for both parties:  Wilma

11   Bradley,  Bruce  Bundick,  N'Gozi  Abolarin,

12   Dorene Jones, and Mary Ann Swigart.  I have

13   approved  the  following  witnesses  for  the

14   Complainant:  Cynthia  Briggs  and  Brad

15   Eickholt.  I  have  approved  the  following

16   witness for the Agency:  Betty Jenkins.

17          I  note  for  the  record  that,

18   although I also approved Tavia Hollenkamp and

19   Doris Kitchings to testify today, it was later

20   learned that they are no longer Federal

21   Government employees, and their appearances

22   could not be secured for today's hearing, so

1  they will not be testifying in these

2  proceedings.

3              Opening statements -- the

4  Complainant has advised that she would like to

5  waive opening statement. Is that correct, Ms.

6  McKinney?

7              MS. McKINNEY:  Yes, we'll waive

8  opening statement.  I think, Your Honor --

9  Administrative Judge Coleman understands the

10  issues in this case, so no need to spend time

11  repeating information that is going to be

12  brought up during the hearing.

13              JUDGE COLEMAN:  Okay.

14              MS. McKINNEY:  So we can waive

15  opening statement.

16              JUDGE COLEMAN:  Okay.  Mr.

17  Alderman, I understand you're going to reserve

18  your opening statement for -- to take place

19  before your case in chief.

20              MR. ALDERMAN:  Yes, Your Honor,

21  that's correct.

22              JUDGE COLEMAN:  Okay.  Great.  So

# EXHIBIT 5



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**

1801 L Street, N. W., Suite 100
Washington, D. C.  20507
(202) 419-0700
TTY (202) 419-0702
FAX (202) 419-0740

Wilma L. Bradley,                           )
      Complainant,                      )
                           )      EEOC No. 100-2005-00029X
        vs.                                )
                           )      Agency No. USDACR 030608
Michael Johanns,                            )
Secretary,                                  )
Department of Agriculture,                  )
      Agency.                           )
                           )      Date: **August 3, 2006**

## <u>ORDER ENTERING JUDGMENT</u>

For the reasons set forth in the enclosed Decision dated August 3, 2006, judgment in the above-captioned matter is hereby entered.  A Notice To The Parties explaining their appeal rights and/or responsibilities is attached to the Decision.  This office is also enclosing a copy of the hearing record for the Agency.

This office will hold the report of investigation for 60 days, during which time the Agency may arrange for its retrieval by calling Tanya Stanfield at (202) 419-0719.  If we do not hear from the Agency within 60 days, we will destroy our copy of these materials.

It is so ORDERED.

For the Commission:

Abigail R. Coleman
Administrative Judge

enclosure



cc (with enclosure):

Chief, Civil Rights Services Division
Office of Civil Rights
U.S. Department of Agriculture
1400 Independence Avenue, SW
Stop Code 9410
Washington, D.C. 20250
*Via first class mail*

cc (without enclosure):

Wilma L. Bradley
5321 Manchester Drive
Suitland, Maryland 20745
*Via first class mail*

Camilla C. McKinney, Esq.
Law Offices of Camilla C. McKinney, PLLC
1100 Fifteenth Street, NW, Suite 300
Washington, D.C. 20005
*Via facsimile to* (202) 517-9111

Leslie D. Alderman, Esq.
Alderman & Devorsetz, PLLC
1025 Connecticut Avenue, NW, Suite 1000
Washington, D.C. 20036
*Via facsimile to* (202) 969-8224



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**

1801 L Street, N. W., Suite 100
Washington, D. C.  20507
(202) 419-0700
TTY (202) 419-0702
FAX (202) 419-0740

|  |  |  |
|---|---|---|
| Wilma L. Bradley,<br>　　　Complainant, | ) ) ) | |
| 　　　vs. | ) ) | EEOC No. 100-2005-00029X |
| Michael Johanns,<br>Secretary,<br>Department of Agriculture,<br>　　　Agency. | ) ) ) ) ) ) | Agency No. USDACR 030608<br><br>Date: **August 3, 2006** |

## DECISION

This decision is issued pursuant to 29 C.F.R. § 1614.109(i)(2004).  The Complainant filed a formal complaint with the U.S. Department of Agriculture ("the Agency" or "USDA") on August 12, 2003, alleging that the Agency discriminated against her in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII") and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* ("ADEA"). Following an investigation of the complaint, the Complainant submitted a request for hearing with this Office.  A hearing was subsequently held on June 20-21, 2006, at which six witnesses testified, including the Complainant.[1]

## ISSUE

The issue before me is whether the Complainant was discriminated against based on her age (DOB 6/9/48) when the Agency declined to select her for the position of Lead Correspondence Review Specialist. *See* HT (I) at 6.[2]

## BACKGROUND

During the relevant time period, the Complainant served as a Correspondence Review Officer ("CRO"), GS-11, in the Agency's Office of the Executive Secretariat ("OES").  *See* ROI at EX 18 (p. 137); HT (I) at 15.  In July 2002, OES posted Vacancy Announcement ("VA") OES-02-03, seeking applicants for the position of Lead Correspondence Review Specialist, GS-

---

[1] The report of investigation will be referred to as ROI.  The hearing transcript consists of two volumes; the first volume will be referred to as HT (I) and the second volume will be referred to as HT (II).  The Complainant's Exhibits shall be referred to as CX and the Joint Exhibits as JX.

[2] Although the Complainant had also alleged retaliation with respect to not being issued a monetary award (*see* ROI at 80), she stated at the hearing that she no longer wished to pursue this claim.  *See* HT (I) at 6.

12. *See* ROI at EX 2 (p. 48).[3]  The Complainant applied for the Lead CRO position. *See* ROI at EX 40 (p. 266); HT (I) at 55.  She testified that in February 2003, she contacted the personnel office to check on the status of her application and was advised that she had not made the Best Qualified List ("BQL"). *See* ROI at EX 7:3; HT (I) at 110-111.  Believing that that her application had been improperly rated, she testified that she contacted the EEO Office to initiate a discrimination complaint. *See* ROI at EX 7:3; HT (I) at 112-115.  She testified that approximately two weeks later, she received a telephone call inquiring as to whether she was still interested in interviewing for the position. *See* ROI at EX 7:3.  The Complainant thereafter interviewed for the position in April 2003. *See* ROI at EX 7:3.  She testified that in May 2003, she was advised that she had not been selected for the position. *See* ROI at EX 7:3.

## ANALYSIS

In the absence of direct evidence of discrimination, the allocation of burdens and order of presentation of proof in a disparate treatment case brought under Title VII or the ADEA is a three-step process.  The complainant has the initial burden of establishing a *prima facie* case. *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).  If the complainant meets this burden, then the burden shifts to the agency to articulate some legitimate, nondiscriminatory reason for the action that has been challenged. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-54 (1981).  The complainant must then prove, by a preponderance of the evidence, that the legitimate reason articulated by the agency was not its true reason, but is a pretext for discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).  The *McDonnell Douglas* framework, although developed in the context of a Title VII case, is equally applicable to cases under the ADEA. *See Paquin v. Federal National Mortgage Association*, 119 F.3d 23, 26 (D.C. Cir. 1997).

To establish a *prima facie* case of discriminatory non-selection, the Complainant need only show that she belongs to a protected group, that she was qualified for and applied for a position, that she was considered for and denied the position, and that other applicants of similar qualifications who are not members of the protected group were selected at the time the complainant's application was rejected. *Valentino v. U.S. Postal Service*, 674 F.2d 56 (D.C. Cir. 1982).  However, whether the Complainant has established a *prima facie* case loses its importance when the Agency, as in this case, responds to the Complainant's claims by offering evidence to explain its actions. *United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 717 (1983).  Accordingly, I shall turn directly to the Agency's articulation concerning its legitimate, nondiscriminatory reasons for not selecting the Complainant.

In that regard, Bruce Bundick, the Director of OES and Selecting Official ("SO") for the Lead CRO position (*see* ROI at EX 18), testified that he prepared a list of questions for the interviewees, and that he and N'Gozi Abolarin, Associate Deputy Director of OES (*see* ROI at EX 18), independently reviewed the candidates' applications and jointly conducted interviews. *See* ROI at EX 9:2; HT (I) at 355-356.  He testified that Cynthia Briggs, the selectee, had been Ms. Abolarin's first choice while his first choice, initially, had been another candidate, Sharon Hudson. *See* ROI at EX 9:2; HT (I) at 351-352, 359.  However, he further testified that after

---

[3] The Lead Correspondence Review Specialist position is also referred to as the Lead Correspondence Review Officer ("CRO") position throughout the ROI and hearing transcript.  I shall hereinafter refer to it as the Lead CRO position.

2

thinking about and reviewing the candidates' qualifications, and after conferring with Ms. Abolarin, he determined that Ms. Briggs was indeed the "strongest candidate." *See* ROI at EX 9:2; HT (I) at 359-360. At the hearing, Mr. Bundick testified as to his specific reasons for selecting Ms. Briggs. *See* HT (I) at 358-360. First, he testified that he was impressed by her experience as a supervisor in a unit of Amtrak that responded to correspondence. *See* HT (I) at 358. He stated that, although she had dealt with a different type of correspondence at Amtrak than she would at the Agency, he nevertheless felt that Ms. Briggs' supervisory experience at Amtrak was "valuable." HT (I) at 358. He further testified that Ms. Briggs did "very well" at the interview and did an "excellent job" of addressing the KSAs in her application. *See* HT (I) at 358. By contrast, Mr. Bundick testified that the Complainant, during her interview, "missed the mark a bit," as her answers to the interview questions "didn't quite go to the big picture" of what had been asked. *See* HT (I) at 361. In further testifying as to what set Ms. Briggs apart from the Complainant, Mr. Bundick testified that Ms. Briggs' "whole application package was better." HT (I) at 362. He stated: "[Ms. Briggs'] responses to the evaluation criteria that we had posted with the application were much more to the point and talked directly about ... actual experience that [she] had had. Her interview followed up on those, and she was able to respond to questions directly related to her experience at Amtrak in a similar kind of situation." HT (I) at 362-363.

As the Agency has articulated legitimate, non-discriminatory reasons for its selection decision, the burden shifts to the Complainant to demonstrate that there is a genuine dispute as to whether the Agency's reasons are a mere pretext for discrimination. The Complainant can do this either directly, by showing that a discriminatory reason more likely motivated the Agency, or indirectly, by showing that the Agency's proffered explanation is unworthy of credence. *Hicks*, 509 U.S. at 507; *Burdine*, 450 U.S. at 256. In asserting pretext, the Complainant contends that the Agency's explanation that it valued Ms. Briggs' management experience is unworthy of credence because such experience derived from a position that she had held at Amtrak, a "quasi-government agency," at least ten years prior to her application for the Lead CRO position. *See* HT (II) at 38. The Complainant further contends that the Agency's reasons for its selection decision lack credence because, generally, Ms. Briggs' experience "in no way measures or even comes close to" the Complainant's qualifications for the Lead CRO position. *See* HT (II) at 39. Further, the Complainant avers that Mr. Bundick, the SO, has exhibited a "consistent pattern of age bias," thereby suggesting that the Agency's reason for the selection was more likely motivated by a discriminatory rather than a legitimate reason. *See* HT (II) at 48. Finally, the Complainant maintains that certain irregularities during the selection process suggest pretext.

I shall address each of the Complainant's pretext arguments in turn. First, concerning Ms. Briggs' supervisory experience, I find that the evidence of record does not support that the Agency's reliance on such experience was pretextual. Specifically, it appears logical that the skills gained by Ms. Briggs in supervising a correspondence unit of Amtrak would translate to the skills required of the Lead CRO, whose job it is to effectively lead a correspondence unit. While true that, at the time she applied for the Lead CRO position, Ms. Briggs had not served in this supervisory capacity for at least ten years (*see* HT (I) at 242), she nevertheless had, at some point, acquired these supervisory skills. While also true that Amtrak appears to be a quasi-government agency as opposed to a government agency (*see e.g.* HT (I) at 243), I find this distinction unavailing in terms of discrediting the Agency's articulation that Ms. Briggs possessed relevant supervisory experience. In that regard, Mr. Bundick attested that in rating Ms. Briggs' candidacy for the position, her Amtrak experience was considered "creditable"

government experience by personnel. HT (I) at 393. Accordingly, I do not find that the Agency's reliance on Ms. Briggs' supervisory experience denotes pretext.

Next, I shall address the Complainant's argument that her qualifications for the Lead CRO position were plainly superior to those of Ms. Briggs. I note that the Commission has held that a finding of pretext can be supported by a showing that a complainant's qualifications are plainly superior to those of a selectee. *See Wasser v. Dep't of Labor*, EEOC Request No. 05940058 (1995); *Bauer v. Bailer*, 647 F.2d 1037, 1048 (10th Cir. 1981). In asserting that her qualifications were plainly superior, the Complainant attested that she had worked as a CRO at OES for several years during which time she received positive performance evaluations (*see* HT (I) at 39; CX 3-7) and multiple appreciation letters for her efforts (*see* HT (I) at 28; CX 8). She also attested that on certain occasions she had served as Acting Director of OES. *See* HT (I) at 57; CX 9. In sum, she contends that her considerable experience as a CRO, and her knowledge of OES procedures stemming from that experience (*see* HT (II) at 52), rendered her "eminently" well qualified for the position (*see* HT (II) at 52), particularly in contrast to Ms. Briggs, who possessed no prior OES experience.

Concerning qualifications, I find that the Complainant has demonstrated, at best, that she and Ms. Briggs were both qualified to fill the position, not that she (the Complainant) possessed plainly superior qualifications.[4] The Commission has held that employers have the discretion to choose among equally qualified candidates so long as the decision is not based on unlawful factors, and that employers have even greater discretion when selecting a management level employee. *See e.g. Page v. EEOC*, EEOC Appeal No. 01932456, aff'd Request No. 05940531 (July 21, 1994).[5] The factors cited by the Complainant as distinguishing her candidacy from that of Ms. Briggs do not give rise to pretext but rather demonstrate that the selection decision did not comport with her personal assessment of the candidates' relative qualifications. Indeed, the fact that she believed she was more qualified and, thus, should have been selected, is not germane. Further, her perception of her own qualifications is not relevant to the question of whether the selection at issue was discriminatory; rather, the perception of the selecting official is the pertinent inquiry. *See e.g. Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980). In that regard, Mr. Bundick's perception of the Complainant's qualifications, having observed her work at OES

---

[4] I note that it is questionable whether the Complainant has even demonstrated that her own qualifications measured up to those of Ms. Briggs in that the Complainant's only supervisory experience consisted of serving as the Acting Director of OES. In that regard, Mr. Bundick testified that one did not gain material supervisory experience from serving as Acting Director. *See* HT (I) at 366-367. He conceded that, although serving as Acting Director is "creditable" experience, it does not, in his view, rise to the level of Ms. Briggs' supervisory experience at Amtrak. *See* HT (I) at 368.

[5] I note that the record demonstrates that whether the Lead CRO position can be properly considered a management level or supervisory position is ambiguous. In that regard, Mr. Bundick testified he considered the Lead CRO position to entail a "subset" of traditional supervisory duties. *See* HT (I) at 335. He further testified that a "Lead" position is "sort of betwixt and between a worker and a supervisor." *See* HT (I) at 335. I note that the vacancy announcement for the Lead CRO position states that the incumbent will serve as a "Team Leader" of the CRO Section and will be "responsible for assuring that the team's work is accomplished in an effective and efficient manner." ROI at p. 48.

Regardless of whether the Lead CRO can be properly considered a management level or supervisory position, the Agency nevertheless has discretion to choose among equally qualified candidates so long as the decision is not based on unlawful factors.

for nearly three years prior to the selection, was that she was "diligent about completing her assignments, but loathe to go beyond that." *See* HT (I) at 369-370. Based on the foregoing, I do not find that the Complainant has demonstrated that her qualifications were plainly superior to those of Ms. Briggs, and therefore her qualifications as compared to those of Ms. Briggs do not support a showing of pretext.

Next, I shall address the Complainant's assertion that Mr. Bundick has exhibited a consistent pattern of age bias giving rise to pretext in the instant matter. In that regard, the Complainant attested that one incident that led her to file the instant EEO complaint was a note in Mr. Bundick's handwriting that had been inexplicably left on her desk and read: "need to sweep the place clean or change attitudes." *See* HT (I) at 115-119; ROI at EX 19. The Complainant attested that she understood this note to mean that Mr. Bundick planned to hire "new and younger employees" and that he did not plan to promote much of the existing OES staff, which, at least in part, consisted of older employees. *See* HT (I) at 118, 206-207. She further attested that this note essentially substantiated a conversation she had had with another OES employee, N'Gozi Abolarin, whom the Complainant testified had indicated that Mr. Bundick planned to "create new and higher positions" at OES, but did not plan to include much of the existing, older staff in the reorganization. *See* HT (I) at 95-99. Mr. Bundick testified, for his part, that the handwritten note in question consisted of a page from his daily notebook, which had been "surreptitiously removed from [his] office and copied and then returned." HT (I) at 297-298. He further testified that the handwritten note reflected a conversation he had had with Doris Kitchings, the former Director of OES, wherein Ms. Kitchings advised him that only a few of the existing OES staff had "good attitudes." *See* HT (I) at 297-302. In sum, I find that, while the note plainly evinces an intent to remove poor performers or change attitudes, it does not reflect age bias simply because the so-called poor performers may have been working at OES a long time and may have been older. Accordingly, I do not find that the handwritten note supports the notion that Mr. Bundick has exhibited age bias, and therefore do not find that it supports pretext.

The Complainant alleges that another example of Mr. Bundick's purported age bias is his allegedly favoring younger OES employees with certain career enhancing opportunities, including the task of conducting interviews for interns (also known as "stay-in-schoolers" (*see* HT (I) at 123)) and the opportunity to obtain security clearances. *See* HT (II) at 51-52. With respect to interviewing interns, the Complainant testified that, although she believed any of the CROs in OES would have been capable of conducting these interviews (*see* HT (I) at 125-125), Mr. Bundick provided N'Gozi Abolarin and Brad Eickholt, both of whom are "extremely" younger than she (*see* HT (I) at 120), with the opportunity to do so. *See* HT (I) at 121-125. The Complainant testified that she believed that by allowing Ms. Abolarin and Mr. Eickholt to interview and subsequently supervise (*see* HT (I) at 124) interns, Mr. Bundick provided them with the opportunity to gain supervisory skills and better position themselves for management opportunities. *See* HT (I) at 125. On cross-examination, however, the Complainant conceded that the "front desk" job duties of Ms. Abolarin and Mr. Eickholt, as opposed to her own "back office" job duties, meant that they worked directly with the interns in the front office. *See* HT at 198-199. Likewise, she conceded that Ms. Abolarin and Mr. Eickholt supervised the interns due to the nature of their "front desk" jobs. *See* HT at 199-200. Similarly, with respect to security clearances, the record shows that Ms. Abolarin and Mr. Eickholt were provided with these clearances because their "front desk" or intake functions meant that they were exposed to classified documents and therefore needed security clearances. *See* HT (I) at 375-383.

Accordingly, rather than denoting pretext, the fact that Ms. Abolarin and Mr. Eickholt interviewed and subsequently supervised the interns and obtained security clearances appears entirely rational in the context of their duties at OES.

Lastly, in terms of purported age bias, I must address the Complainant's contention that the overall list of individuals whom Mr. Bundick had hired to work at OES demonstrates that he favored younger individuals. In that regard, the Complainant argues that approximately eighty five (85) percent of Mr. Bundick's selections consist of individuals who are "significantly younger" than she is. *See* HT (I) at 148-154; HT (II) at 49 citing CX 21:24 (JX 24). While true that a substantial majority of the employees that Mr. Bundick has hired to work at OES are younger, and in some instances significantly younger, than the Complainant, I do not find that this circumstantial evidence is indicative of age bias, particularly as I have found none of the other evidence of purported age bias presented by the Complainant to be persuasive.

Finally, I must address the Complainant's contention that certain irregularities during the selection process suggest pretext. With respect to the Complainant's application, the record demonstrates the following sequence of events. After applying for the Lead CRO position, the Complainant testified she contacted Agency Personnel, in February 2003, to check on the status of her application. *See* ROI at EX 7:3. The Complainant attested that she was at that time advised that she had not made the Best Qualified List ("BQL"). *See* ROI at EX 7:3. She further testified that, believing her application had been improperly rated, she contacted the EEO Office to initiate a discrimination complaint. *See* ROI at EX 7:3. She attested that approximately two weeks later she received a telephone call from the Agency inquiring as to whether she was still interested in interviewing for the position. *See* ROI at EX 7:3. The Complainant stated that she thereafter interviewed for the position in April 2003, but ultimately was not selected for the position. *See* ROI at EX 7:3.

The Agency, for its part, does not dispute that there was a slip-up in the selection process concerning the BQL. Specifically, Dorene Lynne Jones, a Human Resources Specialist involved in rating applicants for the Lead CRO position (*see* HT (II) at 5-6), testified that it came to her attention after an initial BQL had been prepared that a crediting plan was missing from the recruitment packet (*see* HT (II) at 8). She testified that due to the missing crediting plan, it was necessary to redo the BQL. *See* HT (II) at 8-10. Ms. Jones attested that it is the SO's responsibility to provide the crediting plan (*see* HT (II) at 15-16), and that when she learned that it was missing from the recruitment packet, Mr. Bundick was contacted, and he immediately provided a crediting plan. *See* HT (II) at 16. With regard to the crediting plan, Mr. Bundick testified that he had provided one to personnel before the creation of the initial BQL and has no idea why it ever went missing from the recruitment packet. *See* HT (I) at 402-404. I find that, although the missing crediting plan is conceivably suspicious, particularly as the Complainant made the BQL only after it was redone, the evidence of record demonstrates that this irregularity in the hiring process was unintentional, and therefore not suggestive of pretext.

## **CONCLUSION**

For the reasons set forth above, I find that the Complainant did not prove by preponderant evidence that she was discriminated against as alleged.

For the Commission:

Abigail R. Coleman
Administrative Judge
Telephone: (202) 419-0722
Facsimile: (202) 419-0739



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Washington Field Office**

1801 L Street, N. W., Suite 100
Washington, D. C. 20507
(202) 419-0700
TTY (202) 419-0702
FAX (202) 419-0740

## NOTICE TO THE PARTIES

*TO THE AGENCY:*

Within forty (40) days of receiving this decision and the hearing record, you are required to issue a final order notifying the complainant whether or not you will fully implement this decision. You should also send a copy of your final order to the Administrative Judge.

Your final order must contain a notice of the complainant's right to appeal to the Office of Federal Operations, the right to file a civil action in a federal district court, the name of the proper defendant in any such lawsuit, the right to request the appointment of counsel and waiver of court costs or fees, and the applicable time limits for such appeal or lawsuit. A copy of EEOC Form 573 (Notice of Appeal/Petition) must be attached to your final order.

If your final order does not fully implement this decision, you must simultaneously file an appeal with the Office of Federal Operations in accordance with 29 C.F.R. 1614.403, and append a copy of your appeal to your final order. *See* EEOC Management Directive 110, November 9, 1999, Appendix O. You must also comply with the Interim Relief regulation set forth at 29 C.F.R. § 1614.505.

*TO THE COMPLAINANT:*

You may file an appeal with the Commission's Office of Federal Operations when you receive a final order from the agency informing you whether the agency will or will not fully implement this decision. 29 C.F.R. § 1614.110(a). From the time you receive the agency's final order, you will have thirty (30) days to file an appeal. If the agency fails to issue a final order, you have the right to file your own appeal any time after the conclusion of the agency's (40) day period for issuing a final order. *See* EEO MD-110, 9-3. In either case, please attach a copy of this decision with your appeal.

Do not send your appeal to the Administrative Judge. Your appeal must be filed with the Office of Federal Operations at the address set forth below, and you must send a copy of your appeal to the agency at the same time that you file it with the Office of Federal Operations. In or attached to your appeal to the Office of Federal Operations, you must certify the date and method by which you sent a copy of your appeal to the agency.

*WHERE TO FILE AN APPEAL:*

All appeals to the Commission must be filed by mail, hand delivery or facsimile.

　　　　BY MAIL:

　　　　Director, Office of Federal Operations

Equal Employment Opportunity Commission
P.O. Box 19848
Washington, D.C. 20036

BY PERSONAL DELIVERY:

Director, Office of Federal Operations
Equal Employment Opportunity Commission
1801 L Street, NW
Washington, D.C. 20507

BY FACSIMILE:

Number: (202) 663-7022

*Facsimile transmissions of more than ten (10) pages will not be accepted.*

## COMPLIANCE WITH AN AGENCY FINAL ACTION

Pursuant to 29 C.F.R. § 1614.504, an agency's final action that has not been the subject of an appeal to the Commission or a civil action is binding on the agency. If the complainant believes that the agency has failed to comply with the terms of this decision, the complainant shall notify the agency's EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance. The agency shall resolve the matter and respond to the complainant in writing. If the agency has not responded to the complainant, in writing, or if the complainant is not satisfied with the agency's attempt to resolve the matter, the complainant may appeal to the Commission for a determination of whether the agency has complied with the terms of its final action. The complainant may file such an appeal 35 days after serving the agency with the allegations of non-compliance, but must file an appeal within 30 days of receiving the agency's determination. A copy of the appeal must be served on the agency, and the agency may submit a response to the Commission within 30 days of receiving the notice of appeal.

# EXHIBIT 6



**UNITED STATES DEPARTMENT OF AGRICULTURE**
**Office of Civil Rights**

United States
Department of
Agriculture

Office of the
Assistant Secretary
for Civil Rights

Office of
Civil Rights

1400 Independence
Avenue SW

Washington, DC
20250

|  |  |
|---|---|
| Wilma L. Bradley,                               ) | |
|     Complainant,                    ) | USDA Complaint No(s).: CRSD-2003-00042 |
|                     ) | (formerly 030608) |

Wilma L. Bradley,                               )
      Complainant,                    )      USDA Complaint No(s).: CRSD-2003-00042
                     )                           (formerly 030608)
                     )                              CRSD-2004-00103
    v.                                             )                           (formerly 040565)
                     )      EEOC No.:100-2005-00029X
                     )
Mike Johanns,                               )
Secretary,                                           )
Department of Agriculture            )
    Agency                                       )
                     )

## FINAL ORDER

In accordance with 29 C.F.R. § 1614.110, this is the final order of the United States Department of Agriculture (USDA) regarding EEOC No. 100-2005-00029X, USDA Complaint No(s): CRSD-2003-00042/CRSD-2004-00103.

On August 3, 2006, the Equal Employment Opportunity Commission Administrative Judge (EEOC AJ) issued an Order Entering Judgment in favor of the Agency in the above captioned cases.[1]    On August 10, 2006, the USDA's Office of Civil Rights received the above-referenced decision.    It is the decision of the USDA to fully implement the EEOC AJ's decision.

Enclosed is a notice of the complainant's appeal rights.

_Sadhna S. True_                                          SEP 1 5 2006
Sadhna G. True                                             Date
Director

Enclosure

---

[1] The record shows that at the hearing, the complainant voluntarily withdrew USDA Complaint Number CRSD-2004-00103, which alleged denial of a monetary award based on reprisal. Accordingly, this complaint will be administratively closed.



SEP 15 2006

**United States
Department of
Agriculture**

Office of the
Assistant Secretary
for Civil Rights

Office of
Civil Rights

1400 Independence
Avenue SW

Washington, DC
20250

Camilla C. McKinney, Esquire
Law Office of Camilla C. Mckinney, PLLC
1100 Fifteenth Street, N.W. – Suite 300
Washington, DC 20005

**RE:    Complainant - Wilma L. Bradley
USDA Complaint No.  CRSD-2004-00103
(formerly 040465)**

Dear Ms. McKinney:

On June 15, 2004, your client filed the above referenced complaint with the United States Department of Agriculture, alleging denial of a monetary award based on reprisal. The complaint was accepted and investigated.  Your client requested a hearing before the Equal Employment Opportunity Commission (EEOC). This complaint was consolidated with complaint number CRSD-2003-00042 for hearing pursuant to 29 C.F.R. §1614.606.  The EEOC Administrative Judge (AJ) issued a decision in the consolidated case on August 3, 2006.  In that decision, the AJ stated that the complainant voluntarily withdrew the claim of denial of a monetary award based on reprisal during the hearing.

Therefore, the record listed under the above-referenced agency complaint number is hereby closed.

Sincerely yours,

Sadhna G. True
Director

Enclosure:    (Decision dated August 3, 2006)

# EXHIBIT 7



MAR 2 6 2004

## AMENDMENT TO ACCEPTANCE NOTICE

**United States
Department of
Agriculture**

Office of the
Assistant Secretary
for Civil Rights

Office of
Civil Rights

1400 Independence
Avenue SW

Washington, DC
20250

Ms. Wilma L. Bradley
8300 Richard Court
Brandywine, Maryland 20613

**Re: EEO Complaint # 030608**

Dear Ms. Bradley:

Your Equal Employment Opportunity (EEO) complaints of discrimination against the Office of the Executive Secretariat (OES) is dated and considered filed on August 14, 2003. It has been assigned the complaint number shown above. Please refer to this complaint number in any future communication on the subject EEO complaint.

Furthermore, this is to respond to your request to amend your discrimination complaint dated and received in this office on October 21, 2003. Based upon a review of your request, we are amending your complaint **(in bold text)** to include the following additional basis and issues because the issues you raise are like or related to your existing claim.

We are accepting and referring for investigation the following claims:

Whether the agency subjected the complainant to discrimination based on her age (DOB: 6/9/48), sex (female), race (Black) and reprisal for prior EEO activity) when management:

1. on May 1, 2003, did not select her for the position of Lead Correspondence Review Specialist, GS-0301-12, under Vacancy Announcement Number OES-02-03;

2. did not allow her to gain supervisory experience by selecting Stay-in-Schoolers/Summer Interns while similarly situated others were allowed to gain supervisory experience (assignment of duties);

3. does not allow her to attend "top level" meetings with him while similarly situated others were allowed to attend;

4. did not submit her position for a "top secret" clearance while similarly situated others positions were submitted; and

5. **on or about October 2, 2003, she was denied a cash award?**

If you desire, you may submit a written statement concerning the agency's articulation of the claim(s). Any such statement must be submitted within 7 calendar days from receipt of this letter and will be included in the complaint file. The statement should be sent to the following address:

> United States Department of Agriculture
> Office of Civil Rights
> Employment Complaints Division
> **Intake, Accept/Dismiss Branch**
> 1400 Independence Avenue, S.W.
> Stop Code 9440
> Washington, DC 20250-9440

The Department of Agriculture (Department) is required, under 29 C.F.R.§1614.606 to complete an impartial, factual and appropriate investigation of the accepted claim(s) within 180[1] days after filing the last of the subject EEO complaints or 360 days after filing the first of the subject EEO complaints. An appropriate factual record is one that allows a reasonable fact finder to draw conclusions as to whether discrimination occurred. The complainant and the Department may voluntarily extend the 180-day time period not to exceed an additional 90 days. In addition, the Department may unilaterally extend the 180-day time period or any period of extension for not more than 30 days where it must sanitize a complaint file that contains classified information.

When the investigation begins, you will be contacted by an investigator. You are required to fully cooperate with the investigator. Failure to do so may result in dismissal of your EEO complaint. Present to the investigator all information you wish considered relevant to the accepted claim(s). Also, provide the investigator with the names of any witnesses you believe should be contacted.

You must keep the agency informed of you and your representative's current address. If the Department is unable to locate you, it may dismiss the EEO complaint under 29 C.F.R. §1614.107(a)(6).

When you receive the investigation report, you will be notified of your right to elect either an agency decision based on the record **or** a hearing with a decision from an Equal Employment Opportunity Commission (EEOC) administrative judge. The notification will provide you with specifics on how to exercise your election rights.

If you have not received the investigation report after 180 days from the filing of your EEO complaint, you have the right to request a hearing from an EEOC administrative judge.

Should you request a hearing, you must send the request to the EEOC office designated in the initial letter we sent you acknowledging receipt of your complaint. As instructed in that letter, you must also certify to the EEOC that a copy of the hearing request was sent to the following address:

---

[1] All references to days refer to calendar days unless specified otherwise.

United States Department of Agriculture
Office of Civil Rights
Employment Complaints Division
**Hearings, Appeals, and Remands Branch**
1400 Independence Avenue, S.W.
Stop Code 9440
Washington, DC  20250-9440

You are also advised that, consistent with EEOC Regulations and the Secretary of Agriculture's strong commitment to the early resolution of EEO complaints, parties are encouraged to seek resolution to complaint(s) at any stage of the EEO complaint process. Settlement discussions may take place throughout the administrative complaint process. If a resolution is achieved, a copy of the settlement agreement must be provided to this office promptly to avoid unnecessary confusion and additional cost.  Likewise, if at any stage of the EEO complaint process you wish to voluntarily withdraw your complaint, you must promptly provide to this office, a written request to withdraw your EEO complaint.

Your withdrawal request must be signed, dated, and include your EEO complaint number.   To ensure prompt receipt, please fax a copy of the voluntary settlement agreement or voluntary withdrawal directly to the **Employment Adjudication Division, at Fax Number (202) 401-8035.**

If you have any questions or concerns regarding the status of your complaint, you may contact the **CUSTOMER SERVICE UNIT** at 1-800-795-3272.

Sincerely,

Robert "Skip" Day
Acting Chief, Employment Complaints  Division
Office of Civil Rights

cc:    ACP, DA

       OES Liaison